KANSAS PACIFIC RAILWAY CO. v. GRANVILLE D. POINTER.

1. ERROR—*When not Prejudicial.* It has been frequently decided by this court, and is now again repeated, that for immaterial errors committed by the district court, which clearly do not tend to the prejudice of the party complaining thereof, this court will not reverse the judgment of the district court.

2. PRACTICE—*Objections to Evidence.* Where a question is asked and objected to, and no reason is given for the objection, the court may, as a rule, overrule the objection, without considering whether the question is objectionable or not, and without committing any error by so doing.

3. ——— *Objections to Depositions.* An objection to evidence contained in a deposition, except an objection for incompetency or irrelevancy, must be made in writing and filed before the commencement of the trial, or the objection cannot be entertained by the court.

4. ——— *Leading Questions.* An objection for incompetency does not raise any question as to whether a question put to a witness is leading or not. The only way to raise such a question is to object to the question because it is leading.

5. ——— *Re-Examination of Witness.* After a witness has been examined in chief, and cross-examined by the other party, the court may still, in its discretion, allow the party introducing him to ask further questions in chief, and upon new matter, the other party, of course, having the right to cross-examine upon the new matter.

6. NEGLIGENCE OF RAILWAY COMPANY; *Right of Person injured to be on Railroad Track; Public Street.* In an action by an individual against a railway company, for injuries claimed to have been caused through the negligence of the servants of the railway company in running a train over the plaintiff, while he was walking on the track of the railway company, which track the plaintiff claimed was located on a public street in the city of Leavenworth, it is competent for the plaintiff, with proper allegations in his petition, to show that the place where the accident occurred was on a public street, either *in law or in fact;* and if he shows either he will not be a trespasser upon the rights of the railway company, so as to relieve the railway company from exercising reasonable and ordinary care and diligence, so as to avoid injuring him. In such a case, the railway company must run their trains with reference to him and to all others who may rightfully be upon the street.

7. DAMAGES; *Nature and Extent of Injuries; Evidence.* The plaintiff may also show in such a case (with proper allegations in his petition) the nature and extent of his injuries, his sufferings, the length of time he was disabled, the value of his time, his expenses in being cured, his condition with respect to the injuries at the time of the trial, his prospective condition, or rather, the effect the injuries will in all probability have

upon him in the future; and this prospective effect may be proved by the professional opinion of the physician and surgeon who attended him, or by any other competent physician and surgeon who has made a sufficient examination of the injuries.

8. ———— *Means and Condition of Plaintiff.* It was not competent in such a case, for the purpose of showing the injuries, or their character or extent, or for the purpose of enhancing the damages which the plaintiff expected to recover, for the plaintiff to prove his pecuniary or social condition, whether he was rich or poor, married or single, or whether he had a family or not.

9. HEARSAY EVIDENCE—*When Incompetent and Prejudicial.* Hearsay testimony is incompetent, and for the court to admit hearsay testimony, which tends to prove that the servants of the railway company were negligent in running their train, whereby the injuries complained of were caused, is a material error, for which the judgment of the court below against the railway company, founded in part on such testimony, must be reversed.

*Error from Atchison District Court.*

POINTER sued the *Railway Company*, and recovered a judgment for the sum of $6,500, for injuries alleged to have been received in being knocked down and run over by the cars of plaintiff in error while he was walking down laterally upon the railroad track with his back to the approaching train. The injury occurred in the city of Leavenworth, in February 1870, at a place where passengers and teams were in the constant habit of crossing the railroad track to the ferry-landing. Plaintiff claimed that before the railway company constructed its road over this ground, the city of Leavenworth had ordered the same opened as a public street. There was evidence tending to show that it had been continuously used as a public street until the railroad was constructed, and afterwards used by the railroad and the public as a highway. The plaintiff claimed that the injury was caused by the carelessness and negligence of the agents and servants of the railway company. The injury occurred near the depot or station of said company, on the plat of ground formerly known as the Levee; and the company claimed that said plat had been dedicated to the use of said railway company and was in the possession of the same, and

that there was not, on said 4th of February 1870, nor at any other time, any public street or road across or upon the said railroad in any direction between the depot and ferry-landing; and they gave evidence tending to show that the usually traveled road for persons and teams to the ferry was west of the railroad track; that there were two tracks of defendant's railroad, about twelve feet apart, and that there were no obstructions between the said tracks, and there was nothing to prevent the plaintiff, or any other person, walking along between said tracks from the depot to the ferry landing, south of the depot; that on said 4th of February defendant's passenger train reached the depot at 4.30 P.M., and as was its custom, after the passengers and baggage were removed therefrom, said train was run backwards down the yard some 300 yards, to be thence run upon a switch; that said train was manned and handled and operated in all respects as it ordinarily and usually was manned, operated and handled, and had upon it, and operating it, the same men that were usually operating it for the purpose of backing, switching and making up the train, and that said men were skillful and competent, etc.; that the plaintiff was wrongfully, and without authority, upon the track upon which said train was moving, going toward the ferry; that when he heard the cars approaching, he looked back, but made no attempt to step off the track, and no effort to save himself, but took three or four steps in the direction he was going before the cars struck him; and there was some evidence tending to show that plaintiff had been drinking and was partially intoxicated. The plaintiff was knocked down upon the track, and several of the cars passed over him. He was pulled out from between the wheels of the engine and tender, seriously bruised and injured, and in an unconscious state of mind. The action was commenced in Leavenworth district court, and the place of trial was changed to Atchison county, and was there tried at the June Term 1871. The evidence was very voluminous, and much of it conflicting. The plaintiff called John Hamilton, the engineer in charge of the locomotive at the time of

the injury, to prove that he, the engineer, saw plaintiff on the track long enough before the injury to stop the train; and failing to make such proof as he desired by Hamilton, he called A. M. Butts to prove what Hamilton had said in that regard. The jury returned a special verdict in which the disputed facts were substantially found in favor of the plaintiff, and against the defendant. Several questions of practice, and questions regarding the competency and admissibility of evidence, which arose on the trial, are sufficiently stated in the opinion. New trial refused, and the *Railway Company* bring the case here on error.

*J. P. Usher*, and *Hurd & Birnie*, for plaintiff in error:

1. The court below erred in admitting evidence in regard to the business in which Pointer was engaged at the time of the injury; and concerning his pecuniary condition. 8 Gray, 46.

2. It was error also to admit the statement of Daniel Labey, as to what was the custom of people in crossing the railroad track at points other than public crossings, or the intersection of the track with a public highway. It was in evidence that Pointer saw the train before it struck him, and instead of leaving the track, went right on as though he was not in danger; and in his own testimony he admits he saw the train before he was hit. We say he had no right to place himself in such a position, and if he did so it was his own folly; the consequences are upon him.

3. It was error in the court to permit, over the objection and exception of the plaintiff in error, the answers to the questions regarding the habit and custom of persons going "along and upon the railroad track below the depot." The petition alleges, and all the testimony shows, that the place where the accident occurred was not at the intersection or crossing of a public highway. The design and object of this testimony was to show that other persons had before made a convenience of the railroad track as a pathway to the ferry-landing, or as a place of loitering, and thereby to claim for the defendant in error a prescriptive right to be there. This

could give him no such right. That other persons, however frequently, have voluntarily assumed for themselves danger and hazard, did not make his negligence less culpable, or require greater care and diligence on the part of the railroad company. He and the public had frequented that place sufficiently often to be aware that it was in constant use by the railroad company, and if he had reasoned at all he must have known a dedication to the public a license or prescription to him to be there, was wholly out of the question, and that his presence there could not fail to be dangerous to himself and injurious to the company. By the law of this state the plaintiff in error had the exclusive right to the use and control of its track at this place, and the defendant could acquire no prescriptive right to be on the track of the railroad company based on the wrongs of others, however frequently the trespasses may have occurred. 5 Kas., 167, 175, 191; Sher. & Redf. on Neg., §§ 482, 488; 44 Penn. St., 375; 17 Ind., 102.

4. That the court erred in admitting over the objection and exception of the plaintiff in error the testimony of A. M. Butts. This witness detailed a conversation between himself and John Hamilton, a witness of defendant in error, who was the engineer on the train at the time of the accident.

The conversation occurred a day after the accident. This was not in rebuttal. It was hearsay testimony. Hamilton's attention was not called to such conversation when on the stand; and if it had been, defendant in error could not impeach his own witness. The declaration made by Hamilton who was the servant of plaintiff in error, was not made by him as its agent, or as a person having authority to bind the plaintiff in error. Such declarations were not parts of the *res gestæ;* were not made until long after the transaction occurred, and ought not, on any account, to have been received in evidence. The object was to show that the engineer backed the train with full knowledge that some person was on the track, and thus show his negligence and indifference to the safety of such person. Who can tell what influence that testimony had upon the minds of the jury? 17 N.Y., 131; 33 Ind., 335.

*Mathias & Farrell,* and *Stillings & Fenlon,* for defendant in error:

1. It will not answer the purpose of plaintiff in error to say that although the city had by ordinance made the grounds where the accident occurred, a street, and the same was used as a public highway when the railroad was constructed, and continued to be so used up to the time of the injury, yet the public had no rights in the same, because no proof is made that the owners of property had relinquished their rights to the land. User by the public is sufficient to establish a highway: 17 Ill., 416; 6 Shep., 409; 19 Pick., 311; 25 Ind., 352.

2. A question will be made on the introduction of the evidence of witness Butts, as to the declarations of John Hamilton, the engineer of the defendant below. Hamilton was in the employ of the defendant below, and the plaintiff was compelled to call him. We do not claim that it was competent to offer this evidence to impeach him, but we do claim that it appearing that he was, to some extent, under the control of the defendant below, we had a right to prove that we were surprised in his evidence. 1 Greenl. Ev., § 444. It being competent to show that we were so disappointed in his evidence, the court could exercise its discretion as to the time when it could be shown that we were so surprised, and the exercise of such discretion is not error. The same principle applies to the re-examination of Hamilton.

3. The plaintiff in error makes some sort of objection that the plaintiff below was allowed to state his residence, his family relations, and that he gave his deposition because he was impecunious, and could not go to the place of trial. If this evidence had been offered as a reason for an assessment of damages, it would be one thing, but quite another when the plaintiff told the reason he was not personally present at the trial.

4. The defendant in error had a right to be where he was when injured. The Railway Company having, as the proof shows, knowledge of such fact, it was bound to use such care as was reasonably within its control, and to have such em-

ployees and appliances as would reasonably guard against injury to persons so using the thoroughfare. Such care was not taken by plaintiff in error, and the injury resulted from that want of care on the part of plaintiff in error. That the judgment should stand in such a case, we refer to 22 N. Y., 212; 32 N. Y., 597; 8 Allen, 227; 31 Penn. St., 358; 32 Barb., 144; 3 Cal., 241; 3 Bosw., 314.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought by Pointer against the Kansas Pacific Railway Co., for injuries claimed to have been caused by the train of the defendant below, knocking down and running over the plaintiff while he was walking on the railroad track of the defendant in the city of Leavenworth. The record of the case is very voluminous, notwithstanding that it is a "case made" under the statutes for the supreme court, and everything expunged therefrom that was thought to be unnecessary for the determination of the questions involved in the case in this court. There are seventy-six exceptions taken by the defendant below (plaintiff in error,) to the rulings of the district court, and several of said exceptions involve more than one question, some of them in fact involve many questions; but we suppose that it is hardly expected that we shall express an opinion upon each of the exceptions taken, or upon each of the questions involved therein separately. If our opinion shall be broad enough to include all the questions raised, without mentioning them in detail, that will be sufficient.

I. The court below committed several errors, but some of the errors committed were immaterial, and will not therefore, as has been well settled, require a reversal of the judgment. Civil code, §§ 140, 304. We decided in *Seibert v. True*, 8 Kas., 53, that "Error in admitting incompetent evidence, which is also immaterial, and clearly does not tend to prejudice the party objecting thereto, is not cause for reversing the judgment." And we have repeatedly decided, that, where a question is asked concerning a certain matter, and the court

permits the question to be answered, and the witness in answering the same says substantially that he does not know anything about the matter, and does not give any evidence concerning the same, it is immaterial whether the court erred or not in permitting the question to be answered: *Gulf Rld. Co. v. Owen,* 8 Kas., 410; *City of Wyandotte v. Noble,* 8 Kas., 444; *City of Atchison v. King,* ante, 550. For the manner of getting rid of an improper answer to a proper question, see *Hynes v. Jungren,* 8 Kas., 391.

II. Where a question is asked and objected to, and no reason is given for the objection, the court may as a rule, overrule the objection without considering whether the question is objectionable or not, and without committing any error by so doing. 2 Kas., 199, 266; *ante,* 176, 186.

III. The objection to evidence contained in a deposition, except an objection for incompetency or irrelevancy, must be made in writing, and filed before the commencement of the trial, or the objection cannot be entertained by the court. Code, §§ 363, 364.

IV. An objection for incompetency does not raise any question as to whether a question put to a witness is leading or not. The only way to raise such a question is to object to the question because it is leading.

V. After a witness has been examined in chief, and cross-examined by the other party, the court may still in its discretion allow the party introducing him to ask further questions in chief, and upon new matter—the opposite party of course having the right to cross-examine upon the new matter.

VI. Whether the allegations of the petition were sufficient or not we do not think it is now necessary to decide; for the attention of the plaintiff having now been called to the supposed defects, he may amend before another trial. There may be some question about the sufficiency of the petition; but considering it for the purposes of the decision of the case in this court as sufficient, we would say, that the plaintiff had a right to show

*6. Place where injury occurs. Public street. When party is not a tres-passer.*

that the place where he was injured was on a public street of Leavenworth; and if he could not show that it was a public street in law, he still had the right to show that it was a public street in fact. And for this purpose if for no other he had a right to show that the public travel was on or over this ground, and to show that such travel was there with the knowledge and consent of the railway company. If he should show that the place where the injury occurred was on a public street, either in law or fact, he would not be such a trespasser as would relieve the railway company from exercising reasonable and ordinary care and diligence towards him. In fact, he would not be a trespasser at all. The railway company in such a case would be bound to run its trains with reference to him, and to every other person who might be rightfully occupying the street. Such persons would have the same right to be on the street as the railway company. In fact, in this case the legal right of the railway company, and that of the public, to use this ground as a street, seems to be about equal. Both derive their right from a city ordinance. The public used this ground for a street, however, long before the railroad was built. If the plaintiff and the railway company each had a right to use said ground, then it was incumbent on each alike to use ordinary care and diligence to prevent and avoid injuries. The plaintiff then had a right to show anything on the part of the defendant that would show a want of proper care, and anything on his own part that would show that he used due care; for if the defendant did exercise ordinary care, or if the plaintiff did not exercise such care, he could not recover. On the other hand, the railway company had a right to show that it exercised the proper care, and that the plaintiff did not do so. If it should be shown on a retrial of this case that the plaintiff had no right to be on the ground where the injury was received, the law of the case with respect to care and diligence would be very different from what we have stated it. The railway company would not then be bound to run their trains with reference to persons who might be

on the track. The railway company would not then be bound to anticipate persons who might be on the track. The plaintiff also had a right (with proper allegations in his petition,) to show by proof the nature and extent of his injuries, his sufferings, the length of time that he was disabled, the value of his time, his expenses in being cured, his condition with respect to the injuries at the time of the trial, his prospective condition, or rather the effect the injuries will in all probability have upon him in the future; and this prospective effect of the injuries may be proved by the professional opinion of the physician and surgeon who attended him, or by any other competent physician and surgeon who has made a sufficient examination of the injuries. Of course it was incompetent, for the purpose of showing the injuries, or their character or extent, or for the purpose of enhancing the damages which the plaintiff expected to recover, for the plaintiff to prove his pecuniary or social condition, whether he was rich or poor, married or single, or whether he had a family or not. *Shaw v. Boston & Worc. Rld. Co.,* 8 Gray, 46. Neither of these could throw any light upon the character or extent of the injuries, nor could either tend in any way to show how much the plaintiff was damaged. Neither could in any way enhance or diminish the amount for which the plaintiff should recover.

*7. Nature and extent of injuries.*

*8. Means and condition of plaintiff.*

VII. The testimony of witness Butts, concerning a conversation had between himself and Hamilton, was clearly and unquestionably inadmissible, and was highly prejudicial to the rights of the defendant. One of the main questions in the case was, whether the defendant through the *negligence of its servants or agents* caused the injuries complained of. The defendant claimed that its servants and agents took all necessary precaution to avoid injuries to any one who might be upon the track, and that its servants and agents were not aware of the presence of the plaintiff on the track until after the accident occurred. On the other hand, the plaintiff claimed that the servants and agents of the company did not take the necessary pre-

*9. Hearsay evidence; prejudicial; incompetent.*

caution to avoid injuries; that they did know, and should have known, of the plaintiff's presence on the track. Hamilton was the engineer of the defendant who had charge of the engine that moved the train that run over the plaintiff and caused the injuries. Butts had no connection whatever with the Kansas Pacific Railway Company. The conversation between Butts and Hamilton was on the next morning after the accident occurred. Butts testified concerning it among other things as follows: "He (meaning Hamilton) told me that he saw a man going behind the train just before the accident happened, and he took no thought of it at the time, and pretty soon afterwards there were some men hallooing to him to stop. He thought they were a-fooling him, and he did not hold up; finally he stopped. The next he saw of the man was between the fire-box and the tank." The train backed on the plaintiff. There is no principle to be found anywhere in the law under which such evidence could be admitted. The only grounds upon which the defendant in error claims it was admissible is, (and we use the exact words of his counsel's brief,) as follows: "A question will be made on the introduction of the evidence of witness Butts, as to the declarations of John Hamilton, the engineer of the defendant below. Hamilton was in the employ of the defendant below, and plaintiff was compelled to call him. We do not claim that it was competent to offer this evidence to impeach him, but we do claim that it appearing that he was, to some extent, under the control of the defendant below, we had a right to prove that we were surprised in his evidence. It being competent to show that we were so disappointed in his evidence, the court could exercise its discretion as to the time when it could be shown that we were so surprised, and the exercise of such discretion is not error." It is true that plaintiff had previously called Hamilton as a witness, but it does not appear that he "was compelled to call him." There were many other witnesses who saw the transaction, and whom the plaintiff could have called, and some of whom he did call. It does not appear that Hamilton was

to any extent "under the control of the defendant below" while he was testifying. And it does not appear that the plaintiff or his counsel ever thought or supposed that they were "surprised" at the testimony of Hamilton until the case was brought to this court. And there is nothing appearing in the record, or elsewhere, that tends to show that they were in fact so surprised. No such claim seems to have been made in the court below, and there is nothing in this court upon which such a claim could be founded. The testimony of Butts concerning said conversation was pure, naked, and simple hearsay testimony. The court erred in admitting it, and for said error the judgment in this case must be reversed. *Luby v. Hudson River Rld. Co.*, 17 N. Y., 131; *Bellefontaine Rld. Co. v. Hunter*, 33 Ind., 335.

VIII. There are other questions raised in this case, but we do not think it is necessary to decide them. They will probably not arise again. We would however refer to the following recent decisions of this court with reference to questions which have been raised in this case, and which may possibly be raised again. *First:* With reference to exceptions to instructions to the jury, see *City of Wyandotte v. Noble*, 8 Kas., 444; *K. P. Rly. Co. v. Nichols & Kennedy*, ante, 235; *City of Atchison v. King*, ante, 550; *Sumner v. Blair*, ante, 521. *Second:* With reference to verdicts, their form, etc., see *National Bank v. Peck*, 8 Kas., 660; *Copeland v. Majors*, ante, 104; *Hazzard Powder Co. v. Viergutz*, 6 Kas., 471; *Arthur v. Wallace*, 8 Kas., 267; *K. P. Rly. Co. v. Reynolds*, 8 Kas., 623. The judgment of the court below is reversed, and new trial ordered.

All the Justices concurring.