**Opinion delivered June 13, 1888.**

## No. 5849.

### AL RUSHING *v.* THE STATE.

1. PRACTICE — EVIDENCE. — Without having shown the statement to be authorized by the accused, the State proposed to prove by the sheriff the statement of the accused's brother to him, that the accused intended to plead guilty when brought to trial, and the defense objected that the testimony was hearsay. Thereupon the county attorney stated that he would legalize the said testimony by subsequent evidence, but, when interrogated by the court, he declined to disclose the facts to be subsequently proved. Notwithstanding this action of the county attorney, the trial court admitted the evidence, and the defendant reserved exception. *Held:* That the trial court erred primarily in admitting the incompetent testimony upon the equivocal statement of the county attorney, and again by its subsequent failure to withdraw it from the jury.

2. SAME.—Evidence to sustain the reputation of a witness for truth and veracity is not admissible when the good character of the witness in that respect has not been directly assailed. A mere conflict between the evidence of the witness and that of other witnesses does not authorize evidence to support character.

3. SAME—BILL OF EXCEPTIONS—CHARGE OF THE COURT, unless fundamentally erroneous, will not be revised in the absence of a bill of exception specifically pointing out the error complained of. A bill of exception, to be considered, must bear the approval and signature of the trial judge.

APPEAL from the County Court of Wise. Tried below before the Hon. W. H. Bullock, County Judge.

This conviction was for an aggravated assault and battery

upon one Tom Miller, and the penalty imposed was a fine of twenty-five dollars.

Tom Miller was the first witness for the State. He testified that he and the defendant met on the night of December 1, 1886, as guests at a dance given at the house of a Mr. Harris, in Wise county. When the dance broke up, the witness went out to gear up Mr. Davenport's team. While he was thus engaged, the defendant passed, and when he reached a point between twenty and thirty yards distant from the wagon, he called the witness to him. About the time that witness reached him he made an insulting remark to witness, and witness made an angry reply. Defendant's brother, under the impression, perhaps, that the witness had a knife, ran up and said: "Whatever Al is into, I am into." Defendant then stooped and picked something up from the ground and struck witness with it. Press Rushing (defendant's brother) then seized defendant and pushed him back. Defendant jerked loose from Press, and exclaiming: "Let me shoot him!" fired his pistol, the ball striking the ground mid way between witness and defendant—the parties being about fifteen feet apart. After the defendant picked up the stone from the ground the witness thrust his hand in his pocket, his object being to frighten defendant, and thus prevent him from making an assault with the stone. He, however, had no knife nor other weapon in his pocket, and made no other demonstration at defendant.

Cross examined, the witness said that besides the witness and defendant, the defendant's three brothers and Frank Cullom were present at the time of the assault, and other parties whom witness could not now name, were near by. Witness placed his hand in his pocket for the purpose of leading the defendant to believe he was armed. He withdrew his hand from his pocket before the defendant fired his pistol. He made no other demonstration than that stated. He had an old broken knife in his pocket at the time, but did not take it out. Defendant made no effort to fire a second shot.

Miss Nannie Davenport was the next witness for the State. She stated that she was seated in the wagon while her brother and Miller were gearing the horses. About the time the horses were hitched to the wagon, and Miller was about to mount to his seat, defendant called him to a point about twenty steps away. Some words passed between them which witness did not understand. She then heard Press Rushing say something

about a knife. Defendant was then caught by his brothers and was being borne away when he exclaimed: "Let me shoot him!" About the same time he drew his pistol and fired towards Miller, and then went off. Miller was standing still when defendant fired the pistol.

Ed Davenport testified, for the State, that he heard the defendant call Miller about the time that he, witness, and Miller got through hitching the horses to the wagon. Miller went to the point where defendant was, and a fuss began. Witness then ran towards the parties and had reached a point about five steps distant from Miller when the pistol was fired. Just before the shot was fired, the defendant said to his brother: "Let me shoot him." Witness heard nothing said about a knife. Miller was standing still, and was making no demonstrations at the time that the shot was fired. Unfriendly feelings existed between the Davenport and Rushing families.

Miss Lou Miller, the daughter of the assailed party, testified for the State, that she was in the wagon when the difficulty occurred, but could see nothing. Defendant called Miller from the wagon. Witness heard Press Rushing say something about a knife during the row. Miss Lou Lipsey, who was also in the wagon, saw nothing of the difficulty, but heard defendant call Miller, heard Press Rushing say something about a knife, and then heard the report of a pistol.

George Wear testified, for the State, that he was present and saw the latter part of the row between defendant and Miller. He heard the parties quarreling and went to where they were. Miller was then standing still and defendant was being borne off by his brothers. He finally said: "I will shoot him!" His brothers then released him and he fired toward the ground in front and a little to the left of Miller. Miller was then making no demonstrations. Defendant then went off, and, about fifteen minutes later, sent for the witness and told him that he wanted to make it up with Miller, that his pistol was accidentally discharged, and that he wanted the witness to so inform Miller. Witness did not see Ed Davenport near the parties, nor did he see the defendant pick anything up from the ground, but he did not see the first part of the row. Miller was standing still when the shot was fired.

Charley Hyland testified that he was standing at a fire about forty yards distant from the parties when the row began. He went to them at once, and when he got there he saw Miller

standing still and defendant struggling to get loose from his
brother Press, exclaiming at the time that he would "shoot the
d—d rascal." Press released defendant and defendant shot at
Miller. Witness did not see Ed Davenport or anybody else
standing behind Miller at that time, but he was directing his
attention particularly to defendant and not to other parties
around.

Charley Davenport testified, for the State, that Miller went to
the defendant when defendant called him, and when he reached
defendant the latter said to him: "I wanted to tell you that you
are a regular 'horse's ass.'" Miller made some reply, when the
parties around seized the defendant. Defendant got loose from
them and fired at Miller, when Press Rushing took the defend-
ant off. Miller was standing still when defendant fired. Wit-
ness was the son of Thomas Davenport, who was in the court
room. He could not say whether or not his father was "backing"
Miller and wanted defendant convicted. The Davenport and
Rushing families were not on friendly terms, and the brothers
and sisters of the witness were witnesses against the defendant
in this case.

Sheriff Mann testified, for the State, that defendant left Wise
county immediately after the assault upon Miller, and was ar-
rested some months later in Hood county. Press Rushing, the
brother of the defendant, came to witness on the morning after
the assault and told witness that he wanted to get the matter
fixed up as cheaply as possible, and that his brother, the defend-
ant, would come in and plead guilty. Witness gave Press Rush-
ing three blank bonds to be filled and executed, all covering
cases against defendant, one for carrying a pistol, another for
disturbing the peace, and the third for assault with intent to
murder Miller. Witness could not say that it was in this case
that the defendant, according to his brother, would plead guilty.

The State rested.

Press Rushing testified, for the defense, that he attended Har-
ris's dance on the night of the difficulty, and he was present and
saw and heard all that transpired between defendant and Miller
on that night. Miller and defendant had a misunderstanding
or quarrel in the house before the dance broke up. When the
dance broke up, witness, with defendant, their two brothers,
Dock and Dick Rushing, and Frank Cullom, left the house to-
gether, and in going to the place where Cullom's horse was
hitched they passed Davenport's wagon, near which Miller was

standing hitching up the horses.   As they passed Miller made an insulting remark to defendant, and defendant replied:   "Miller, I thought this thing was settled."   About the time defendant and his party reached Cullom's horse and were about to go on home, Miller came up, and some words which witness did not understand, passed between Miller and defendant.   Defendant then said that Miller was a d—d rascal.   Miller, thrusting his hand into his pocket, replied:   "You shall not say that to me; I will cut you."   Pulling out his knife, Miller closed in on defendant, when witness, who was nearest defendant, caught him and jerked him backward.   Miller cut at defendant three or four times with his knife, and slashed defendant's coat in three places.   While Miller was cutting at defendant witness released defendant and said to him:   "Look out, Al., he will cut you."   Defendant then pulled his pistol and fired.   About the time that Miller drew the knife witness called to him:   "Don't cut him with that knife!"

Cross examined, the witness said that he went home with the defendant on the night of the difficulty, and that defendant left home before daylight on the next morning.   He was gone about two weeks, when he came back to witness's house and remained a few days, and went off again without visiting town. Witness went to town on the next morning and told the sheriff that defendant would plead guilty and wanted to fix the matter up as cheaply as possible.   In making that statement to the sheriff he had reference to the charge of carrying the pistol, and not to this charge.   This witness denied that defendant stooped and picked up a stone and struck Miller, and declared that Miller was advancing and cutting with the knife when the · shot was fired.   This witness was corroborated circumstantially by Dock Rushing and Frank Cullom, the former of whom declared positively that neither of the Davenport boys were at the scene of the difficulty, and that he did not see either Hyland nor Wear.

The defense closed.

Ed., Nannie and Charley Davenport, Tom Ewing, Lou Lipsey and Lou Miller testified, for the State, in rebuttal, that Miller said nothing whatever to defendant, nor to either of the other parties, when they passed the wagon, and that he was in the act of climbing into the wagon when defendant called him.   Each of the said witnesses declared most positively that Miller was standing still when defendant fired the pistol, and that he at no

time advanced upon defendant, and that he was making no demonstrations of any kind when the shot was fired.

Tom Miller testified, for the State, in rebuttal, substantially as he did in chief, and in addition declared that he was getting into the wagon when the defendant called him, and he denied that he spoke a syllable to anybody when defendant and his party passed the wagon. He stated further that when, having been called, he approached defendant, the defendant said to him: "Suppose I were to tell you that you are a regular horse's ass?" To which witness replied: "Well, suppose you did?" The subsequent proceedings were then enacted as stated by witness on his examination in chief.

Four or five witnesses, introduced by the State, testified that they were familiar with Miller's reputation for truth and veracity, and that it was good.

*T. A. Fuller,* for the appellant.

*W. L. Davidson,* Assistant Attorney General, for the State.

WILLSON, JUDGE. On the morning after the alleged assault, Press Rushing, the brother of defendant, stated to Mann, the sheriff, that his brother, the defendant, would plead guilty, and wanted the matter settled up as cheaply as possible. Defendant was not present when this statement was made, and there is no proof that he authorized his brother to make any such statement.

When this evidence was offered, the defendant objected to it upon the ground that it was hearsay, whereupon the county attorney stated that he expected to prove facts which would render said testimony legal, but declined to inform the court, when interrogated, what such facts were. Said testimony was admitted by the court, and the defendant reserved his exceptions by bill. The Assistant Attorney General confesses that this action of the court was erroneous, and we agree with him; and we are further of the opinion that such illegal testimony was calculated to injure the rights of the defendant. It should not have been admitted in the first instance upon the equivocal and uncertain statement of the county attorney that he expected to show its admissibility; and, having been admitted erroneously, the error was repeated, and made more prejudicial, by the failure of the court to exclude such testimony from the jury. (Phillips

v. The State, 22 Texas Ct. App., 139; Marshall v. The State, 5 Texas Ct. App., 273.)

Over objections of the defendant, the State was permitted to introduce evidence proving that the general reputation of the prosecuting witness, Miller, for truth and veracity, was good. No evidence had been introduced by the defendant which directly assailed the veracity of the witness, Miller, further than that which contradicted his statements with relation to the main issue.  There was simply a conflict between his testimony and that of the witness for the defense in regard to the alleged assault—such a conflict as is of common occurrence in cases of this character.   No particular discrediting facts had been developed against said witness, and he was not a stranger in the county, but a resident there.   We do not think it was proper to admit such testimony, as the facts do not bring the case within any exception to the general rule which excludes testimony as to the good character of a witness, unless the veracity of such witness has been directly assailed. (Phillips v. The State, 19 Texas Ct. App., 158.)

In the brief of counsel for the defendant, several objections are urged to the charge of the court, and objection is also made to the refusal of the court to give special instructions requested by the defendant.   We have examined the charge, and do not find it free from errors, but the errors, we think, are of a character which do not, in the absence of proper bills of exceptions, require notice, as they are not fundamental and on another trial may not occur.   There is in the record a paper which counsel for defendant refers to as a bill of exceptions to the charge of the court, but upon inspection we find that the trial judge refused to allow and approve said bill, but states that it is incorrect.   We can not consider it as a bill of exceptions.

Because of the errors committed in the admission of testimony, which have been mentioned, the judgment is reversed and the cause is remanded.

*Reversed and remanded.*