THE STATE OF KANSAS v. GEORGE NOLAN.

1. ARSON—*Opinion Evidence—Error.* It is incompetent for a witness to testify upon a criminal trial against a defendant charged with arson, that he "thought the house was set on fire by some one;" and as this testimony was erroneously received, and may have influenced the jury in rendering their verdict, the error in receiving such incompetent evidence cannot be declared an immaterial one.

2. EVIDENCE—*Instructions.* The defendant was charged with arson in the first degree, under ? 49 of the act relating to crimes and punishments. All of the evidence admitted upon the trial tended to show that the dwelling-house was burned in the night-time, and had, at the time it was set on fire and burned, a human being therein, who was burned up with the house. *Held,* That it was not error for the court, in its instructions to the jury, to refer to arson in the first degree only.

3. ———- *Punishment.* Under the various statutes of the state relating to crimes and punishments, criminal procedure, the penitentiary and jails, taken and construed together, the legislature in the revision of the statutes in 1868 intended thereby to provide for the punishment of a person guilty of arson in the first degree by confinement to hard labor in the penitentiary of the state.

4. ——— *Constitutional Law.* Where a person is convicted of arson in the first degree, he may be sentenced under the statutes of this state to confinement and hard labor in the penitentiary of the state for not less than 10 nor more than 21 years, and such a sentence is not in violation of the constitution or laws of the United States.

*Appeal from Atchison District Court.*

PROSECUTION for arson in the first degree. From a conviction, at the April term, 1891, the defendant, *Nolan,* appeals. The opinion states the facts.*

*W. P. Waggener,* for appellant.

*W. T. Bland,* county attorney, for The State.

The opinion of the court was delivered by

HORTON, C. J.: On the night of Sunday, the 7th day of

---

* NOTE.—The original opinion was handed down on March 5, 1892. Subsequently a rehearing was had, and on July 8, 1892, a supplemental opinion was filed, and the original opinion is corrected as decided on the rehearing.

December, 1890, the dwelling-house of Edward Farris, a col-
ored man, in Walnut township, in Atchison county, in this
state, was burned. The size of the house was 12 by 16 feet.
It was built of box lumber. The floor was pine. The ceiling
was plastered. The house had one room only, with two win-
dows. The east window was located near the center of the
east end, and the west window was near the southwest corner.
The door of the house was on the south side, nine feet from
the edge of the door to the corner. The roof ran up to an
angle of a five-foot pitch. At the time the fire commenced,
there were in the house two children of Edward Farris,
Maud, two years of age, and Ethel, four months of age.
There was a stove in the house at the west end, two feet from
the wall. There was a stove-pipe running from the stove up
through a hole in the ceiling of the house. The pipe was a
six-inch one. There was a place two feet square for the pipe
to run through the ceiling, and at the top of the roof the
square was 10 inches. The pipe at the roof had sheet-iron
around it, and this was nailed to the roof. A little after 6
o'clock P. M., on the 7th of December, 1890, Edward Farris,
with his wife and a friend, left his house and went down to
Mr. Potter's, a neighbor who lived a quarter of a mile away.
He left his little children in the house at the time, Maud be-
ing on the bed in the northeast corner of the house, and Ethel,
the baby, in a cradle or box, (it had been a trunk, but it was
used to lay the baby in, and was 12 inches high.) When
Farris left the house, the cradle was against the south wall,
and there was a little fire only in the stove. Farris testified:
"You could not tell there was any fire in the stove, unless
you raked among the ashes." After Farris had been at
Potter's about 30 minutes, he saw a light in the direction of
his house. He started for his house as fast as he could, and
found it "burning very lively." He tried to get in at the
door, but he could not on account of the fire. The wind was
in the northwest, blowing around the south side of the house.
He then went to the east window, and after knocking the win-
dow in, got inside, and tried to get the little baby, but could

not, because the southwest corner of the house fell on the child, which was burned up. He succeeded in getting his other child, Maud, out of the bed. When Farris first reached the house the flames were going up about the eaves, and the west end of the house was on fire, and it was also burning around the door on the south side. He did not see any fire on the roof when he first got to the house, nor any fire around the stove, or stove-pipe. For light Farris used a lamp and coal oil, but on the night of the fire he did not light the lamp. and no light was burning in the house when he left it. George Nolan, also a colored man, lived about three-quarters of a mile from Edward Farris's. About a month before the house was burned there had been a quarrel between Farris and Nolan.

Nolan was charged with arson in the first degree for setting fire to and burning the house. He was convicted "of arson, as charged," and was sentenced to the penitentiary of the state at hard labor for a period of 10 years. He appeals to this court. Pearson Potter, a witness examined on behalf of the state, testified as follows:

"Ques. When you got to the house did you notice how the fire had started? Ans. Yes, sir.

"Q. Did it appear to have been started accidentally, or was it set on fire? A. Well, I think it was set on fire by some one."

Of course, the opinion or belief of this witness about the house having been set on fire should not have been received by the court, and upon the request of the defend-ant it should have been taken away from the jury. Such evidence is wholly incompetent. (*Tefft v. Wilcox*, 6 Kas. 40; *Monroe v. Lattin*, 25 id. 351; *Railroad Co. v. Peavey*, 29 id. 170.)

1. Arson—opinion evidence—error.

The defendant, George Nolan, is a poor colored man, almost without friends, except his attorneys, who have prosecuted this appeal in his interest as a matter of charity. In the opinion as originally filed we stated that it was incompetent for Pearson Potter, a witness for the prosecution, to testify against the defendant that "I think the house was set on fire by some

one." Upon the argument, the court's attention was almost wholly directed to the proposition that the sentence of the defendant to confinement and hard labor in the penitentiary of the state was not authorized by the statute, and was in violation of the constitution of the United States. For that reason the possible or probable influence of the incompetent testimony upon the jury did not receive sufficient consideration. We said in the opinion as first handed down that the admission of this incompetent evidence was not a material error. There was no testimony that any one saw George Nolan set the dwelling-house on fire. There were threats and certain admissions testified to; otherwise, the proof concerning the burning of the house was circumstantial only.

After a reëxamination of all the testimony in the record, and especially in view of portions thereof which seem almost incredible, the members of the court are unanimously of the opinion that the ruling heretofore made must be changed. We cannot say that the error referred to was not material or prejudicial. It was decided in *Gilleland v. Schuyler*, 9 Kas. 569, that —

"Where testimony is erroneously received, which may have influenced the court or jury in the findings or verdict, the error cannot be considered immaterial."

Mr. Justice BREWER, speaking for the court in that case, said:

"It may be said that the testimony was immaterial, and that the error worked no substantial injury to the plaintiffs in error, because, first, there was sufficient testimony without this to support the findings, and, secondly, there was no finding that these specific fraudulent votes, or indeed that any fraudulent votes, were cast. The rule that requires this court to sustain the findings of the district court, unless clearly against the weight of evidence, avoids the first reason, for we cannot say how much this testimony influenced the court in its findings, nor determine whether without it the findings would have been as they are. If testimony is erroneously received which may have influenced the court or jury in the finding or verdict, we cannot call the error immaterial. The findings or verdict must be based upon nothing but compe-

tent testimony before any presumption in favor of their correctness will arise in this court. For, otherwise, the court or jury may, disbelieving the witnesses who give competent testimony, reach their determination mainly or wholly on the incompetent evidence, and so a party obtain a judgment he is not in fact entitled to. The record must be clean, which, when passed upon by court or jury, is sought to be sustained in this court because it has been so passed upon." (See also *Railway Co. v. Pointer*, 9 Kas. 620; *Muscott v. Hanna*, 26 id. 770.)

. This is a criminal case, in which the defendant is charged with a felony. Before he could be convicted, it was necessary to establish before the jury, beyond a reasonable doubt, that the dwelling-house of Edward Farris was "set on fire." We cannot say how much the incompetent testimony influenced the jury; therefore, as it was erroneously received, and may have influenced the jury in their verdict upon an important issue of the case, we cannot call the error immaterial.

It is contended that the instructions of the court and the form of the verdict were erroneous, because, it is urged, the defendant might have been found guilty of arson in the second degree under § 51 of the act regulating crimes and punishments, or § 54 of that act, or of arson in the third degree, under § 58 of the act. We think otherwise. Arson in the night-time, under § 49 of the crimes act, does not include arson in the day-time as defined in §§ 51, 54, or 58. (*The State v. Behee*, 17 Kas. 402.) Again, in this case, it is clearly established that the house was burned in the night-time, and that there were in it at the time of the fire two children, one of whom — the baby — was burned up. If the defendant was guilty of setting fire to or burning the house of Edward

2. Evidence —     Farris, as is alleged in the information, he was
   Instructions.   clearly guilty of arson in the first degree; not of
arson in the second, or any other degree. (*The State v. Rhea*, 25 Kas. 576; *The State v. Hendricks*, 32 id. 559; *The State v. Mize*, 36 id. 187.)

It is next contended that the court committed several errors in permitting the state to indorse the names of witnesses upon

the information at the trial, and also in giving and refusing other instructions. We have examined these alleged errors with great care, and do not perceive any error therein, or anything to justify comment thereon.

The further contention is, that the sentence of the defendant to confinement and hard labor in the penitentiary of the state is in violation of the constitution of the United States, and not authorized by any statute of this state. The argument in support of this is, that a public offense, within the meaning of any statute of the state, is any act or omission for which the laws of the state prescribe a punishment; that public offenses are divided into felonies and misdemeanors; that a felony is an offense punishable by death or confinement and hard labor in the penitentiary; that all other public offenses are misdemeanors; that offenses committed against the laws of the state are punished in the county in which the offense is committed, except as may be otherwise provided by law, and that every person who is convicted of any degree of arson is to be punished as follows: "In the first degree, by confinement and hard labor not less than 10 years, nor more than 21 years," etc. (Crim. Code, §§ 3, 4, 5, 20; Crimes Act, § 60.) Therefore, it is concluded that as there is no express provision of the statute providing that a person convicted of arson in the first, or any other degree, shall be punished by confinement and hard labor in the penitentiary, the crime of arson is not a felony under the statute, but a misdemeanor only, if anything, and punishable, if at all, in the county in which the offense is committed.

The argument of counsel for the defendant against any confinement in the penitentiary for the crime of arson, very forcibly presented, is plausible, and upon first presentation seems of considerable force. But a consideration of other statutes *in pari materia* shows that the construction contended for would not only be unfortunate to the state, in opening the doors of the penitentiary to hundreds of convicts confined therein, but cannot be sustained. There are only two places of imprisonment provided by law: The penitentiary (Const.,

art. 7, § 2; Gen. Stat. of 1889, ¶¶ 3534, 6456,) and the county jail. (Gen. Stat. of 1889, ¶ 3534.)

Section 60 of the crimes act reads:

"Every person who shall be convicted of any degree of arson shall be punished, by confinement to hard labor, as follows: First, in the first degree, by confinement and hard labor not less than ten years nor more than twenty-one years. Second, in the second degree, by confinement and hard labor not less than seven nor exceeding ten years. Third, in the third degree, by confinement and hard labor not less than five nor more than seven years. Fourth, in the fourth degree, by confinement and hard labor not more than four years, or by imprisonment in the county jail not less than six months."

The obvious meaning of this section is, when its provisions are construed together, that, by use of the words "by confinement and hard labor" for a term of years, the legislature plainly intended that the imprisonment therefor should not be in the county jail. Imprisonment in the county jail cannot be construed in the fourth subdivision to mean the same as "confinement and hard labor" in the first clause of this subdivision. "Confinement and hard labor not more than four years" is used disjunctively with the clause, "imprisonment in the county jail not less than six months." See also §§ 426–435 of the crimes and punishments act. Section 434 of this act reads:

"A sentence of confinement and hard labor for a term less than life, suspends all civil rights of the person so sentenced during the term thereof, and forfeits all public offices and trusts, authority and power; and a person sentenced to such confinement for life, shall thereafter be deemed civilly dead."

It is not credible that the legislature of 1868, or any legislature since that date, intended that imprisonment in a county jail, with labor or without, suspends all the civil rights and forfeits all the public offices, trusts, and authority of a person restrained therein.

Again, the general statutes of Kansas were revised in 1868. The statutes establishing the code of criminal procedure and relating to crimes and punishments took effect October 31, 1868. At that time, there was a statute in force concerning

the state penitentiary. This took effect March 7, 1868. (Ch. 77, p. 607, Gen. Stat. of 1868.) This statute expressly provides that every able-bodied convict of the penitentiary should be assigned to and kept at some employment suitable to his strength for at least eight hours per day, and it was made the duty of the warden to use every proper means to furnish employment to the prisoners in the penitentiary, most beneficial to the public and best suited to their several capacities. Provision was also made in the statute for carrying on manufacturing and mechanical business in the penitentiary by convicts. At the time the statute defining felonies and misdemeanors, and providing for the punishment of arson, went into force, the act concerning county jails also took effect. But this act made no provision for the keeping of prisoners in any county jail at hard labor, or other work. Therefore, on the 31st day of October, 1868, when the statutes relating to crimes and punishments and providing for the punishment of arson in the first degree at confinement and hard labor took effect, the only place provided by statute for the confinement of prisoners at hard labor was in the penitentiary of the state; not in the county jail, or at any other place. When the legislature expressly provided that arson in the first degree should be punishable by confinement and hard labor not less than 10 years, nor more than 21, we must assume the legislature intended that the confinement and hard labor would be at the place where the legislature had provided hard labor or like employment must be exacted of convicts. The only place in the state where prisoners were then confined at hard labor was in the penitentiary, and if the statutes referred to by counsel for the defendant be read and construed as they should be, with other statutes and with those relating to the penitentiary and jails, it inevitably follows that the legislature intended the offense of arson in the first degree should be punishable by confinement and hard labor *in the penitentiary;* otherwise the provision in regard to the punishment of arson in the first degree has no force and is meaningless. This construction has been recognized by all of the district

3. Punishment.

courts of the state, and also by this court, ever since the adoption of the statute of 1868, over 23 years.

While we fully recognize the rule to be "that the penal and criminal statutes are to be strictly construed in those particulars which are against persons charged with their violation, but liberally construed in those particulars which are in their favor," yet, for the purpose of liberating convicts and releasing parties guilty of crime, we are not to unnecessarily strain any statute by construction so as to give it no force or meaning. In 1863, John Millar was convicted in Leavenworth county of the offense of assault with intent to kill. He was "sentenced to two years at hard labor in the penitentiary of the state." At that time the statute, while defining a felony to be any offense for which the offender was liable to be punished by confinement and hard labor, provided that any one guilty of assault with intent to kill might be punished by confinement and hard labor for a term not exceeding 10 years, but did not state that the confinement was to be in the penitentiary. It was urged by Millar, upon his appeal to this court, that there was no statute of the state authorizing his punishment "*by confinement in the penitentiary.*" But in the case this court decided that "the term 'penitentiary' is an English word in common use, signifying a prison or place of punishment, . . . and means the place of punishment in which convicts sentenced to confinement and hard labor are confined by authority of law." (*Millar v. The State,* 2 Kas. 174.)

Under the various statutes of the state, taken and construed together, the defendant, if properly convicted of arson, may

4. Constitutional law.

be sentenced to confinement and hard labor in the penitentiary of the state. Such a sentence upon such a conviction is fully authorized by the laws of Kansas, and therefore not in violation of the constitution or the laws of the United States.

The judgment of the district court will be reversed and a new trial granted on account of the reception of incompetent evidence.

All the Justices concurring.