### BRUNER v. UNITED STATES.

No. 792, Ind. T.   Opinion Filed June 23, 1908.

(96 Pac. 597.)

1.   EVIDENCE—Overtures to Witnesses.   To admit in evidence overtures to purchase witnesses to testify in defendant's behalf, where it is not shown that defendant was responsible therefor, is error.

2.   SAME —Evidence of Independent Assault — Purpose — Instructions. Where, in a homicide case, evidence is admitted of an independent assault hade by a third party unknown to defendant upon deceased, by reason of which deceased was being taken home and killed on his way by defendant, the purpose and effect of such evidence should be set out by the court in an instruction limiting it in its operation to an explanation of the presence of the deceased at the place of the homicide.

(Syllabus by the Court.)

*Error from the United States Court for the Western District of the Indian Territory, at Okmulgee; Louis Sulzbacher Trial Judge.*

Louis Bruner was convicted of manslaughter, and he brings error. Reversed.

*Joe S. Eaton* and *H. E. P. Stanford,* for plaintiff in error.
*William M. Mellette, U. S. Atty.*

DUNN, J. Lewis Bruner was convicted at the February, 1906, term of the United States Court for the Western District of the Indian Territory at Okmulgee of the crime of manslaughter, from which judgment and sentence thereon he appealed to the

United States Court of Appeals of Indian Territory, and the case is before this court by virtue of the terms of the enabling act.

At the close of the case, on the part of the government in rebuttal. one Jessie McGee was offered as a witness against the defendant. Objection was made to the reception of the testimony of this witness, for the reason that her name did not appear upon the indictment, and, although the rule had been invoked for the exclusion of the witness, she had been in the courtroom during the taking of the testimony. This objection was overruled, and the witness was restricted in her evidence to such only as was not covered by the testimony of any witness who had theretofore testified in the case. She testified that John Bruner, the defendant's brother, had offered to pay her $25 if she would testify in defendant's behalf. There was no showing made as to what she was expected to testify to, but merely that it was to be in the interest of the defendant. In a conference which took place between the counsel and the court on the admission of this evidence, counsel for the government represented that the defendant would be connected with the offer. On its conclusion, counsel for the defendant moved to strike it out, for the reason that it was not shown that the defendant was connected with the making of the offer, and that it was on this condition that evidence was admitted. The court overruled the motion to strike out the evidence, and this is assigned as one of the errors. There is no pretense that the evidence was offered for the purpose of impeaching John Bruner who was a witness for the defendant, and no authority is cited by counsel for the government tending to support or sustain its admissibility. That it was incompetent and irrelevant we think there can be no question, nor can we say that it was not prejudicial to the rights of the defendant. If the defendant could have been shown to have been connected with it, to have either made the offer himself or to have prompted his brother to make it, or even had it been shown that he was making a promiscuous offer for witnesses to testify in his behalf, the evidence would have been admissible against him because of these things, but the authorities are practically without exception that such evidence is inadmis-

sible and that its reception by the court was error. *Cecil v. Territory*, 16 Okla. 197, 82 Pac. 654; *Hardtke v. State*, 67 Wis. 552, 30 N. W. 723; *Newton v. State*, 41 Tex. Cr R. 610, 56 S. W. 64; *Nalley v. State*, 28 Tex. App. 387, 13 S. W. 670; *Rushing v State*, 25 Tex. App. 607, 8 S. W. 807; *Barbee v. State*, 23 Tex. App. 199, 4 S. W. 584; *Favors v. State*, 20 Tex. App. 155.

The case of *Cecil v. Territory, supra,* was one wherein the defendant was charged with the crime of rape. During the trial of the case the father of the defendant was called as a witness for the territory, and over the objection of the defendant. was required to detail the particulars of certain negotiations which he had conducted with the parents of the girl, having for their object a settlement or compromise of the criminal proceedings about to be brought against his son. It was not shown that the son knew of these negotiations. Justice Gillette, speaking for the court, said:

" 'The admission of the defendant, particularly an offer on his part to pay a certain sum of money to the prosecutrix or her mother, to settle the matter, are always relevant against him.' Underhill on Criminal Evidence; § 418; *Hardtke v. State*, 67 Wis. 552, 30 N. W. 723; *McMath v. State*, 55 Ga. 303. As the evidence fails to in any way connect the defendant with the negotiations of the father, it was clearly hearsay, incompetent, and prejudicial, and its reception was material error."

In the case of *Hardtke v. State, supra,* the prosecutrix was allowed to testify over the objection of the defendant's counsel that a certain party had told her what to say in reference to her injury. This was assumed to have been at the instance of the defendant when there was no evidence to support it, and the court in the syllabus holds: "The prosecutrix should not be permitted to testify what a third person, not shown to have been acting for the defendant or with his knowledge, told her to say about the injury." And this is one of the grounds on which the case was reversed.

The case of *Newton v. State, supra,* was one similar to the case at bar, wherein an offer was made to a witness by a third party to testify in defendant's behalf. It was shown that the de-

fendant was not present when this offer was made, and that he knew nothing about it. The court in the consideration of the same says: "It is well settled, by a long line of decisions in this state, that overtures to purchase witnesses, and matters of that sort, made by others than defendant, without his knowledge and consent, cannot be used against him upon his trial." And the case was reversed on account of this error.

Nor, as we have above said, are we able to say that this evidence was not prejudicial to the defendant. He was entitled to have the issue of his guilt or innocence presented to the jury upon the relevant and competent evidence properly applicable thereto, and he was entitled to be relieved of the damaging cloud which evidence of this character would throw over his entire case unless he was responsible for it. The illimitable scope of undeserved damage the cause of a defendant might suffer through friends or enemies should evidence of this character be admissible is readily seen; and where in a case such evidence appears, and it is not clearly shown that the defendant is responsible for it, and proper exceptions are saved, a conviction will not be sustained. It is a general rule, finding sanction in many authorities, that, "where testimony is erroneously received which may have influenced the court or jury in the findings or verdict, the error cannot be considered immaterial." Such is the holding of the Supreme Court of the state of Kansas in the case of *Gilleland v. Schuyler*, 9 Kan. 569, which is cited approvingly by that court in the case of *State v. Nolan*, 48 Kan. 723, 29 Pac. 568, 30 Pac. 486, wherein Mr. Chief Justice Horton, speaking for the Supreme Court of that state, and quoting from the case just cited, which was written by Mr. Justice Brewer, says:

"It may be said that the testimony was immaterial, and that the error worked no substantial injury to the plaintiffs in error, because, first, there was sufficient testimony without this to support the findings. * * * If testimony is erroneously received which may have influenced the court or jury in the finding or verdict, we cannot call the error immaterial. The findings or verdict must be based upon nothing but competent testimony before any

presumption in favor of their correctness will arise in this court; for otherwise the court or jury may, disbelieving the witnesses who give competent testimony, reach their determination mainly or wholly on the incompetent evidence, and so a party obtain a judgment he is not in fact entitled to. The record must be clean, which, when passed upon by court or jury is sought to be sustained in this court because it has been so passed upon."

For the error caused by the introduction of this testimony, this cause must be reversed.

We will, however, notice one other objection made on the introduction of the evidence which would be likely to occur in the new hearing. There is but little controversy between the evidence for the state and that for the defendant. The homicide took place at a picnic. The defendant being called a vile name by one of the women assaulted her. He, in turn, was set upon by her brothers and the deceased. On escaping from them, he fled, but did not leave the grounds. The deceased seated himself upon a log not far from the scene of the first difficulty, and while sitting there, was assaulted by the half-brother of the defendant, who immediately fled. The deceased then immediatly mounted a horse, and was riding off of the grounds, when, overtaking the defendant, the defendant turned and fired the shot from which he died. Evidence of this assault was admitted, which is assigned as error. There is not disclosed by the record the theory under which it was heard; but, as it is not shown that defendant connived at or knew aught of it, its operation should be confined simply to a showing of why the deceased was on the horse and in explanation of his presence at the scene of the shooting for the purpose of rebutting the inference that he was still pursuing defendant, and an instruction should be given the jury limiting the effect of this evidence to this one end.

Numerous other errors are assigned in the brief of plaintiff in error, some of which relate to the order and manner of the reception of the evidence, but most of them concern the instructions given by the court. These we will not notice as it is not likely that the same errors will be made in a new trial of this cause. The

issue is a simple one on an indictment for murder and no complications ought to arise on a new trial in the instructions, and we believe we have settled the uncertainties of the evidence.

The judgment of conviction is set aside, and a new trial is granted defendant.

All the justices concur.