## W. H. LANKSTER v. THE STATE.

### No. 2310. Decided December 19, 1900.

**1. Change of Venue.**

Where appellant made a motion to change the venue from H. County, upon both the statutory grounds, and the court proposed to change the venue to A. County, to which defendant objected upon the ground that the same influences and prejudices existed against him in A. County as in H. County, which objection was overruled by the court and the venue changed to A. County; Held, no error. If the causes did exist in A. County, defendant should have moved in that county to change the venue to some other county.

**2. Same—Motion to Retransfer.**

Where there were pending in H. County two indictments or cases for the same murder, and defendant made an application for change of venue in the first case, and all the orders and trial of the motions were in said first case, but the venue was in fact ordered changed to A County in the second case, in which defendant had not been arrested and arraigned; Held, the venue was improperly charged to A. County, and it was error to overrule defendant's motion to retransfer the case to H. County.

**3. Murder—Malice Aforethought—Charge.**

On a trial for murder where the court charged the jury that, "It is not necessary that the slayer should have greater enmity against the person killed than against others, nor need any enmity be shown in order to constitute legal malice. And, if the homicide be intentional, unlawful, and without excuse or justification, no previous design to kill need be shown in order to constitute malice aforethought; it may be a sudden, rash impulse." Held, erroneous.

**4. Same—Self-Defense—Charge.**

On a trial for murder, where the court instructed the jury, in effect, that, if the acts or words of the deceased were such as raised, in the mind of the slayer, a reasonable expectation of fear of death, etc., then the killing would be justified or excused according as the apprehension was correct or not. Held, the expression, "according as the apprehension was correct or not," was erroneous. Self-defense does not depend upon the slayer's correct apprehension of apparent danger.

**5. Same—Evidence—Fabrication of—Rebuttal.**

On a trial for murder where the State had introduced testimony tending to show that defendant, through his son, had attempted to fabricate or fix up eveidence in his behalf, defendant had the right to rebut such testimony and remove its effect from the minds of the jury.

**6. Fabrication of Evidence by Third Party—Inadmissible, Unless, etc.**

The fabrication or attempted fabrication of evidence by a third party, even the son of defendant, is totally inadmissible against defendant, unless the defendant is connected with or authorized the act of the son in so doing.

**7. Continuance—Evidence as to.**

It is not competent on the trial of a case to introduce evidence with regard to the absence of a witness named in an application for continuance. It is not a question of inquiry before the jury.

APPEAL from the District Court of Anderson. Tried below before Hon. A. D. LIPSCOMB.

Appeal from a conviction of murder in the second degree; penalty, fifteen years imprisonment in the penitentiary.

This is the second appeal in this case. See Lankster v. State, 41 Texas Crim. Rep., 603, wherein will be found a statement of the essential facts attendant upon the killing.

*Wm. Watson, Moore & Newman,* and *Adams & Adams,* for appellant.

The case originated in the District Court of Houston County, on a bill of indictment therein presented, charging W. H. Lankster with the murder of Jones Reinhardt. There were two bills of indictment presented, and on the first bill, the defendant, appellant, was tried in the District Court of Houston County, convicted of murder in the second degree, and a punishment of twenty-five years in the penitentiary assessed against him. On appeal this conviction was very thoroughly reversed, for errors committed on the trial. When the case was returned to the District Court of Houston County and while it was pending on a motion by the defendant to change the venue, the indictment in the first case was dismissed; why, does not appear. No arrest was made under the new indictment, but when the order to change the venue was made, the defendant entered into a recognizance, and by some process, the number of the case was changed from that of the old indictment to that of the new indictment. The venue was changed to Anderson County, the court overruling defendant's motion to change the venue, and changing it on his own motion. The trial in Anderson County resulted in a conviction of murder in the second degree and a penalty of fifteen years in the penitentiary. The court erred in his charge in defining malice, by declaring that no enmity was necessary to show malice and the error is more palpable in view of the evidence on the state of feeling between defendant and deceased.

It is not necessary that the slayer should have greater enmity against the person killed than against others, nor need any enmity be shown to constitute legal malice, and if the homicide be intentional, unlawful and without excuse or justification, no previous design to kill need be shown in order to constitute malice aforethought. It may be a sudden, rash impulse. We have always thought, although a killing be unlawful and intentional, yet if there were circumstances of extenuation, and that it was a sudden trouble, no previous design nor ill will being shown, even if such killing was neither excused nor justified, yet extenuation would be a circumstance to rebut malice. Certainly, this court has so ruled. Hill v. State, 11 Texas Crim. App., 456; Neyland v. State, 13 Texas Crim. App., 536; Cullen v. State, 16 Texas Crim. App., 379.

The court erred in refusing to allow Ben Lankster, son of defendant, to state how he obtained information of the evidence of the Hunters because the State by innuendo had sought to impress the jury with the idea that Ben Lankster had fixed up such evidence, and defendant had the right to meet such attempt by the State by proof of the facts.

The State asked William Hunter while on the stand if Ben Lankster did not tell him that he wanted him to swear that he (Hunter) heard defendant say just before the shooting: "Get out of the way, Reinhardt." The witness answered "yes." Now, the court will re-

member that William Hunter is an ignorant negro boy, and to show the facts we put Ben Lankster on the stand, and offered to prove by him that the father of William Hunter told him that William had heard this. That Ben Lankster then went to William and asked him if he had heard such expression, and William replied that he had, and that Ben then told him he wanted him as a witness, and wanted him to swear to these facts. The court refused to allow Ben Lankster to testify to these facts. The result was that uncontradicted evidence was used against defendant, when if the truth had been allowed it was utterly harmless, but as it stood it was a deadly menace to defendant. Nor did the court limit this evidence in his charge. We can conceive of no more fearful evidence against a defendant than proof that evidence is fixed to clear him. Let a jury once believe this, and the defendant's chance for an acquittal is reduced to a minimum. And this is what the ruling of the court did, and that, too, when we stood in open court, with the witness on the stand, claiming our right to remove this false impression from the jury.

*Rob't A. John,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was indicted for murder in Houston County in cause number 4424. On a former appeal the judgment was reversed. 41 Texas Crim. Rep., 603. When the case was called for trial subsequent to the reversal, motion was made by appellant to change the venue on both grounds provided by statute. Evidence was introduced in support of the motion. There are several questions raised with reference to the motion and the manner of trying it, the error of the court transferring the case to Anderson County, where appellant alleged the same influences and prejudices were against him as in Houston County. Appellant's motion was overruled, and the venue changed by the court of its own motion, and sent to Anderson County. This was not error, under the decisions of this court. If the causes did exist in Anderson County, appellant should have moved to change the venue in that county. But a serious question is raised upon the motion of appellant to retransfer the case to Houston County. The court refused the motion and to hear the evidence bearing upon it. If the facts are as contended by appellant, we believe the retransfer should have been granted. While the record is not distinct and clear, as it should be, yet upon another trial, if the facts are as contended, we believe this order should be granted. The facts, as contended by appellant, would show: That the application for change of venue and the change of venue occurred in cause number 4424. Pending this motion—that is, before its ultimate decision—an indictment charging him with the same murder was presented by the grand jury, and the cause was numbered on the docket 4470. That all the orders, trial of the motion, etc., were had in number 4424, but the change of venue occurred

in number 4470, in which it is alleged defendant had not been arrested or arraigned. If, as a fact, the motion and subsequent orders on the motion were in number 4424, they had no application to number 4470, and therefore cause number 4470 was erroneously transferred to Anderson County. We are not deciding the question, but, if the facts are as we understand appellant contends, then the issue should be investigated; and, if the facts are so found, the case is improperly in Anderson County.

The ruling of the court in regard to the application for continuance will not be discussed, as upon another trial it may not arise.

Error is assigned upon the following charge: "It is not necessary that the slayer should have greater enmity against the person killed than against others, nor need any enmity be shown, in order to constitute legal malice. And if the homicide be intentional, unlawful, and without excuse or justification, no previous design to kill need be shown in order to constitute malice aforethought; it may be sudden, rash impulse." We do not believe this is a correct charge. We do not deem it necessary to cite authorities.

The court also erred in the following portion of his charge: "There can be no unlawful homicide without unlawful intent. And in every case, in determining whether the attack or assault or supposed assault is such as to justify or excuse the homicide or not, the circumstances must be viewed from the standpoint of the slayer; and, if the act or acts and words of the person making the attack or supposed attack were such as raised in the mind of the slayer a reasonable expectation or fear of death or serious bodily injury, as viewed from the slayer's standpoint, then in such case the killing would be justified or excused, according as the apprehension was correct or not." We desire to emphasize the last expression, "according as the apprehension was correct or not," as error. Self-defense does not depend upon the slayer's correct apprehension of apparent danger. A deceased party may, under such circumstances, draw an unloaded pistol. The accused, believing his life in danger, shoots and kills. Yet, as a matter of fact, he may have been in no danger, for the pistol was unloaded. If defendant believed, under such circumstances, that his life was in danger, or the appearances were such to him, he would have the right to shoot whether his apprehension was correct or not, and be justified under the law of self-defense.

The State proved by the witness Hunter that he had seen B. M. Lankster, son of defendant, before he (witness) testified, and Lankster had told him what to swear to. Defendant then offered to prove by said Lankster that he did not tell Hunter what to swear to, but that George Hunter, father of the witness Hunter, told him (Lankster) what his son had heard; and Lankster then, in the presence of. George Hunter, asked the witness Hunter what he knew; and, after witness had told him, that he (Lankster) told witness that he wanted him as a witness to prove these facts. This was offered to rebut any

presumption raised in the minds of the jury that he (defendant) was fixing up evidence through his son, or anyone else. The court rejected the testimony, and appellant excepted. This testimony should have been admitted under the circumstances. The State had undertaken to leave the impression upon the jury that the younger Lankster was fabricating or manufacturing testimony in aid of his father. It would take no authority to support the proposition that defendant had the right to meet this, and remove its effects from the minds of the jury. We wish to state further that the character of testimony here introduced by the State was totally inadmissible, unless the State could connect defendant with the act of his son in going to Hunter. He was not bound by the act of his son, unless he authorized it.

By another bill of exceptions it is shown the State placed Earl Adams on the stand, and proved by him that W. F. Lovejoy was in court when the case was formerly tried, and was not placed on the witness stand by defendant. Appellant then offered to prove by the witness the reasons for not using Lovejoy as a witness, which reasons are stated. Adams was used evidently to meet one of the allegations of the continuance based upon the absence of Lovejoy. This could not be done, as it was not a question of inquiry before the jury. But, having been permitted, certainly defendant was entitled to remove any adverse impression made by reason of its admission.

For the errors pointed out, the judgment is reversed and the cause remanded.

*Reversed and remanded.*