### WILL SUGGS v. THE STATE.

#### No. 2941.. Decided March 9, 1904.

**1.—Assault with Intent to Rape—Irrelevant Statements.**

While a State's witness was testifying, he was permitted over objections of appellant to say that appellant's mother had come to witness' house and talked to his mother about the case, and the court explained his ruling on the ground that witness was unwilling to testify and that the court permitted the questions to be asked witness, to see why witness was unwilling to testify. Held, defendant not being responsible for witness' conduct, he could not be bound by what his mother said or did.

**2.—Charge of the Court—Abandoned Intention.**

It was error on part of the court to charge that if appellant was frightened away from accomplishing his evil intention that he was nevertheless guilty of an assault with intent to commit rape, when the evidence did not indicate that he was frightened away.

Appeal from the District Court of Titus. Tried below before Hon. P. A. Turner.

Appeal from a conviction of an assault with intent to rape; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Ralston & Ward,* for appellant.—The court erred in giving to the jury that portion of the eighth paragraph of his charge, which is as follows, to wit: "And the same is true if he was frightened away before accomplishing his evil intention." Being "frightened away" has reference to fright produced by extrinsic agencies and not to fright that was produced by the fact of the woman trying to escape from her assailant. Walton v. State, 29 Texas Crim. App., 163; 1 Whart. Crim. Law, 8 ed., secs. 811, 812; Caddel v. State, 5 Texas Ct. Rep., 833.

The court, over the objection of the appellant, allowed the district attorney to ask the witness Will Wray if the mother of the appellant did not stay all night at the home of the witness, and if she did not talk to him about the case, and permitted the witness to answer that she did stay at his home the night before the trial, but did not talk to him about the case, but that she heard the appellant talking to the mother of the witness, in the witness' presence, about the case. This was error. Runnels v. State, 8 Texas Ct. Rep., 770.

Appellant asked her to kiss him and put his arms around her shoulders. That is consistent with the very best of intentions and does not indicate anything more than that he was fond of her and wished to caress her in the most tender manner, without intending to do her any personal violence, either in person or feeling. He said that he was so surprised and scared when she jumped out of the buggy, when he asked her to kiss him, that he tried to catch her and hold her to keep her from going off, and tried to get her back into the buggy, and that they had some scuffle in that effort, and that he finally gave up the effort and let her go. It had snowed the day before, and the ground was wet and

slippery, and he said that in the scuffle she slipped and fell, and that he fell to his knees, and that he then helped her up and she jerked loose from him and ran off, and he tried to get her into the buggy all the time. This is consistent with his innocence, and reasonably probable. And the whole evidence is consistent with the presumption of innocence of the appellant. Shields v. State, 32 Texas Crim. Rep., 498; Ellenburg v. State, 35 S. W. Rep., 989; Porter v. State, 33 Texas Crim. Rep., 385; Walton v. State, 29 Texas Crim. App., 163; Dockery v. State, 35 Texas Crim. Rep., 487; Caddell v. State, 5 Texas Ct. Rep., 833; Coffee v. State, 8 Texas Ct. Rep., 557; O'Brien v. State, 40 S. W. Rep., 969.

*Howard Martin,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Two years imprisonment in the penitentiary was allotted appellant on conviction of assault with intent to rape. The evidence discloses that defendant had been waiting upon prosecutrix, that is, they had been going out together on occasions for some time.

On the evening of the alleged assault she was driving in a buggy with appellant; and among other places visited a graveyard, where appellant's father was buried. On leaving the graveyard they were to go to the home of prosecutrix. Appellant chose the route of an old and unused road, stating it was a nearer way. This old road was grown up with brush, and considerably incumbered with logs, so that it was with some difficulty the buggy could be driven. After going some distance, appellant stopped the horse, and requested prosecutrix to kiss him. This she declined. Thereupon he placed his arms around her shoulders. Prosecutrix jerked loose from him, and jumped out of the buggy, her cape falling off. She secured the cape, and started to run. Appellant ran after and caught her by the shoulders, but did not say anything. Prosecutrix was crying and screaming and begging him to let her alone. She testified at this point: "He then threw me down on my back and got down on the ground on his knees and tried to mistreat me, and take the advantage of me. I fought him all I could and did all that was in my power to keep him off of me. I pushed him off of me with my hands and kept him from getting on me. I had a considerable struggle with defendant, and finally got loose from him and started to run off, and defendant after me; he told me to wait until he could turn the buggy around and he would take me home. But he did not catch me the last time. He said he was sorry; and I told him I would die before I would get back in the buggy with him." From this point prosecutrix went to Johnson's, whence one of the school boys accompanied her home. Another witness testified that the clothes of prosecutrix "on her back were wet in several places." This is the substance of the State's case.

The testimony of appellant is in substance the same as that of pros-

ecutrix up to the point of the alleged assault. In regard to that matter he testified: "When we got into the buggy I said to Miss Laura there was an old road we could go and intersect the Clarksville public road, and that would be nearer to go home. When we got in the buggy she took the lines, and when I suggested we go the old road, she reined the horse into that road, and drove until we came to some fallen timber, and I was afraid she would run the buggy against a tree and then I took the lines and drove. When we got down in the old road, I stopped the buggy and laid my arm around her shoulders, and asked her to kiss me. She jerked loose from me, and jumped out of the buggy and I tried to keep her in the buggy. Her cape fell off in the buggy at the time she jumped. I got out of the buggy and handed her cape to her, and asked her to get in the buggy; and told her I did not intend to hurt her, and told her I was sorry, and would take her home. She told me she would die before she would get back into the buggy with me. I then took hold of her arm and asked her to get back in the buggy; and she tried to get loose, and said she would die first. I tried to hold her. We had some scuffle, I trying to hold her and she was trying to get loose; and she slipped and fell on the ground. She did not fall on her back, but fell to a sitting position with her right hand on the ground. I helped her up and she then jerked loose from me and ran off. I tried to catch her, keep her from going off and leaving me; but I saw she was going anyway and I went back and got in the buggy and tried to overtake her. I overtook her, tried again to get her to get back into the buggy; but she again refused, saying that she would die before she would get back in the buggy with me. When I saw I could not overtake and persuade her to get back in the buggy and let me carry her home, I drove on home by myself. I did not try to rape her. The reason I tried to get her back in the buggy and keep her from going off and leaving me there and walking home was that I did not want any one to know anything about the trouble between us." This practically presents the case, omitting some details as to prosecutrix's evidence of mortification, and appellant's hiding from the officers.

While Will Ray was testifying in behalf of the State, he was asked if the mother of defendant went to his (witness') house and spent the night before the trial, and if she did not talk to witness about the case. Objection was urged that defendant was not responsible for what his mother had done, if anything; and the State had not shown defendant sent his mother to see the witness; and the question and answer was calculated to prejudice him before the jury. These objections being overruled, the witness testified that the mother of defendant spent the night previous to the trial at his (witness') house, but did not talk to him about the case. He heard appellant's mother, however, talking to the mother of witness about the case while at witness' house that night. This is qualified by the court with this statement: "This witness

seemed unwilling to testify. The court permitted the questions to be asked to see if the reason could be developed why the witness was unwilling to tell what he knew." This explanation rather intensifies the error. If the witness was unwilling to testify, any legitimate explanation could be shown for the unwillingness; but in no event could it be imputed to appellant unless appellant was connected with that reason· or induced the witness to favor him in some way, either by testifying falsely or in refraining from testifying to the facts. He would not be bound by anything his mother said or did, without his connivance or consent. We think this testimony was of such a damaging character as to require a reversal.

An exception was reserved to the latter portion of section 8 of the charge. The entire section is as follows: "If you believe from the evidence beyond a reasonable doubt that the defendant committed an assault upon the person of Laura Patterson, she then and there being a woman, with the intention then and there to rape, ravish and carnally know her, the said Laura Patterson, without her consent, and with force, as above explained to you in this charge, then you will find him guilty of an assault with intent to rape; although you may believe from the evidence that defendant abandoned his intention before he actually accomplished his previous intention, and the same is true if he was frightened away from accomplishing his evil intention." The criticism is that there was nothing in the evidence to indicate appellant was frightened away. This criticism is correct. There was no evidence adduced, from either side that appellant was frightened away. The prosecutrix testifies that she ·was frightened and ran away, but it is conclusively shown that appellant remained and tried to induce prosecutrix to remain and get in the buggy with him and let him take her home.

For the errors discussed the judgment is reversed and the cause remanded.

*Reversed and remanded.*