## Lee Parks v. The State.

### No. 2959. Decided March 9, 1904.

**1.—Theft of Cattle—Confessions Under Arrest.**

Where defendant was found in possession of one cattle and was asked by the prosecuting witness and the sheriff to return with them to town, and if he would show them that he came honestly by the animal they would turn him loose, and that on the way back he told them two or three contradictory statements as to how he came by the animal, and when they reached town, defendant, not giving a satisfactory explanation, was formally placed under arrest by the officer; such statements were inadmissible against defendant when placed on trial.

**2.—Same—Exculpatory and Inculpatory Statements.**

Where the purpose of the State is in introducing conflicting statements against defendant while under arrest and not warned, not to impeach simply, but to show in the first instance self-contradiction as to his acquisition of the stolen property and to use such testimony against him as criminative and inculpatory, the same are inadmissible. Qualifying Quintana v. State, 29 Texas Crim. App., 401; Ferguson v. State, 31 Texas Crim. Rep., 93. Following Bailey v. State, 40 Texas Crim. Rep., 150; Rogers v. State, 6 Texas Ct. Rep., 316.

**3.—Evidence—Memorandum Book.**
    It is permissible for a witness to refresh his memory, as to a particular date, from a memorandum book.

**4.—Same—Defendant Bound by Statement of Agent.**
    Statements, by one authorized generally by the defendant that any arrangement he would make with State's witness would be satisfactory, that he offered to bribe such witness are admissible against defendant, although such particular offer was not expressly mentioned by the defendant.

**5.—Indictment—Submission of One Count Dismisses Others.**
    Where upon a former trial the court submitted one out of several counts in an indictment charging one transaction, it operated as a dismissal of the counts not submitted, and it was error for the court to submit them or one of them at a subsequent trial on the same indictment, and the case should have been submitted only on the count upon which it was formerly tried.

Appeal from the District Court of Erath. Tried below before Hon. W. J. Oxford.

Appeal from a conviction of theft of one cattle; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Martin & George, J. B. Keeth,* and *J. T. Daniel,* for appellant.—The court erred in admitting in evidence before the jury, over the objection of the defendant, the testimony of the witness Wiley Smith, to the effect that the defendant said to him at the time he was found in the possession of the alleged stolen animal, that he had traded a Jersey cow for the alleged stolen animal, and that soon thereafter he further stated that he had given a ten-dollar check for the same; that he also stated afterwards that he had paid a ten-dollar bill for it; because the defendant was at the time of making each of said statements under arrest, was not warned, and said statements were incriminating, inculpatory, and in the nature of admissions of guilt, and against interest. 16 S. W. Rep., 258; 19 S. W. Rep., 901; 26 S. W. Rep., 195; 51 S. W. Rep., 908; 36 S. W. Rep., 438; 66 S. W. Rep., 457; Ferguson v. State, 31 Texas Crim. Rep., 93; see also White's P. C., art. 790; Patrick v. State, 74 S. W. Rep., 550.

The court erred in admitting in evidence before the jury the testimony of Willis Smith to the effect that Sol Jackson had offered to bribe him, Willis Smith, to go before the officers and have the defendant's case dismissed; because said proposition was not in the presence of the defendant, was not authorized by him, was hearsay, irrelevant, and calculated to prejudice the rights of the defendant before the jury. Townsend v. State, 36 Texas Crim. Rep., 76; Byrd v. State, 26 Texas Crim. App., 374; Wright v. State, 37 Texas Crim. Rep., 627; Roberts v. State, 47 S. W. Rep., 358; see also White's P. C., sec. 1243, and authorities there cited.

The court erred in permitting the witness T. M. Tyson to testify in the presence of the jury, and to read from his book a certain memoranda to the effect that he did certain work on July 8, 1902, for third party, and that from the date of the work in the book he knew what

day he had seen the animal alleged to have been stolen; because the court·thereby admitted the said book in evidence, and the contents thereof were res inter alios acta, or things between other parties, and were not binding 'upon this defendant, and were irrelevant and injurious to the defendant.

The court erred in submitting to the jury, over the objection of the defendant, the second count in the indictment; because there had theretofore been a former trial of the cause, in which trial the court had limited the consideration of the jury to the first count, whereby the State and the court had abandoned the second count in the indictment, and the same was of no further force and effect. 29 Texas Crim. App., 597; 34 Texas Crim. Rep., 123; 36 Texas Crim. Rep., 386; 37 Texas Crim. Rep., 552; 39 Texas Crim. Rep., 282; 16 S. W. Rep., 532; 37 S. W. Rep., 425.

*Howard Martin*, Assistant Attorney-General, for the State.—Was appellant under arrest? Bain·v. State, 7 Texas Ct. Rep., 899; Connell v. State, 75 S. W. Rep., 512. On admitted statements of defendant: Quintana v. State, 29 Texas Crim. App., 401; Ferguson v. State, 31 Texas Crim. Rep., 93. On question of memorandum book: McFaddin v. State, 28 Texas Crim. App., 241.

HENDERSON, Judge.—Appellant was convicted of the theft of one head of cattle, and his punishment assessed at confinement in the penitentiary for a term of two years.

By the first and third bills of exception the action of the court is challenged in the admission of certain testimony introduced by the State, it being claimed that appellant was under arrest at the time and that he had not been warned. The first bill shows substantially, that prosecutor Wiley Smith by some means learned of the taking of the animal in question, and gave pursuit. Subsequently he procured the deputy sheriff and four other persons to assist him. They came on defendant, who had the yearling in his possession, just about the time of reaching his pasture, and was putting said yearling in the same; that they came up with him at this juncture, and halted him just as he was going in the gate with the animal. That the prosecutor then and there claimed the animal, said it was his, and told defendant he must come back with them to Dublin, which was some seventeen or eighteen miles distant; that if he would show he was not guilty they would turn him loose; that appellant went back in company with the deputy sheriff and the others; and under these circumstances en route he made the following statements to them: First, he stated he traded a Jersey cow for the animal in connection with some others with a man living below Dublin; that he went after this one and found it below Dublin and brought it up to this pasture. Subsequently he stated to them that

he bought the animal from a man named McKnight or McWright; and that he gave him a check for it; and that as soon as he got back to Dublin he would show them the check; that they told him it would be all right if he could do that, that they would turn him loose. This last conversation was about fifteen minutes after he made the first statement. When they got back to Dublin they went with him down to see if he could produce the check, and he failed; and then told them that he gave a ten-dollar bill for the yearling. And about this time the officer told him to consider himself under arrest. The sheriff further testified that he intended to hold him until he showed where he got the yearling; that he did not intend to let him go unless he did. The sheriff further testified that when they first came up with him at the pasture, after Smith identified the yearling as his, he stated "That settles it with me, we will have to see your title to the yearling, and if you do not show how you came by the yearling I will have to arrest you." Appellant said he would take the yearling wherever he said for him, and that he would go back to Dublin with them and show he came by it honestly; that he then told him we would go back to Dublin with him; and he then turned the yearling over to Mr. Jones, and he carried it back to Williams' place, and put it in his pasture. The court explains the admission of this testimony by stating: "In the mind of the court these statements of defendant, taken separately as made, were not inculpatory, but were exculpatory statements, and not confessions." It appears that, in the mind of the court, there was no question as to the arrest of defendant, or that under the conditions appellant must have considered himself under arrest. We think this a correct view of the matter. The circumstances are much stronger than in Nolen's case, 9 Texas Crim. App., 419; and much stronger are the facts tending to show arrest than in Connell v. State, 75 S. W. Rep., 512; 45 Texas Crim. Rep., 142. However, the State contends that the testimony was admissible, not as a confession, but as the statement of facts not in their nature inculpatory, but rather exculpatory, adopting the view entertained by the lower court. In support of its contention it cites Quintana v. State, 29 Texas Crim. App., 401; Ferguson v. State, 31 Texas Crim. Rep., 93. Quintana's case on this point holds that a defendant who testifies in his own behalf may be impeached by a statement made by him, although such statement was made under circumstances which rendered the same inadmissible against him as inculpatory evidence. However, it is observed that the impeaching testimony was not a confession, but of an exculpatory character. In Ferguson's case, contradictory statements of appellant were introduced in evidence against him, he being under arrest at the time and not even warned. It is held in that opinion, that, "While the contradictory statements made by appellant as to his possession of property recently stolen may be given in evidence, yet such statements have not been held to be confessions of guilt under the statutes. If such accounts are to be considered as confessions of guilt, it would not

devolve upon the State to disprove them as a prerequisite to a conviction. Nor would the court be authorized or required to charge the jury that such an account must be disproved in order to warrant a conviction." Eckhart's case, 9 Texas Crim. App., 109. "The State is not required to disprove confessions in order to convict, but must do so when the account given of possession is reasonable and probably true." Since the decision in those cases, the question has been several times before this court. In Bailey v. State, 40 Texas Crim. Rep., 150, it was held that any statement made by defendant, he not being warned, which could be used against him as inculpatory evidence, was not admissible, citing Fulcher v. State, 28 Texas Crim. App., 465. And this was followed in Rogers v. State, 6 Texas Ct. Rep., 316. It will be noted that the testimony here introduced was not for impeachment purposes, the defendant at the time not being upon the stand; but was used against him as original evidence of an inculpatory character. That is, one statement was introduced as to how he came by the property, and then another and different statement was introduced as made by him, thus showing a self-contradiction and a falsifying on his part as to how he came into possession of the property in question. Undoubtedly here the purpose of the State was to show in the first instance such falsification, and to use the testimony against him as criminative and inculpatory. As was said in Bailey's case, supra, "While a rigid construction of the statute might confine the testimony strictly to technical confessions of guilt, yet we believe the terms of the statute have a broader signification, and that it was intended to protect a defendant while in jail and to prevent the State going into the jail and proving inculpatory or criminative facts against defendant by declarations or statements, he not being warned as the statute requires." In accordance with the rule laid down by these authorities we do not believe the testimony was admissible.

We believe it was permissible for the witness Tyson to refer to his pocket memorandum book, in order to fix a date when he saw the alleged stolen animal. The use of the book was merely collateral and served no other purpose than to fix the date. But it was admissible for this purpose, and the witness could explain how it served to refresh his memory as to the particular date. See White's Ann. C. C. P., sec. 1106; Spangler v. State, 41 Texas Crim. Rep., 424.

Appellant insists that the court erred in admitting the testimony of Willis Smith, to the effect that Sol Jackson offered to bribe him to go before the officers and have defendant's case dismissed. The bill shows that this testimony was admitted under the following circumstances. That on one occasion, after he got back from the Territory, about two months after the alleged theft, he met Jackson in Dublin; that said Jackson introduced appellant to him, and told him that appellant was a Mason of high-standing, and that he had worked with the sheriff for

several years, etc.; and that after talking awhile there in regard to the alleged theft of the yearling, he wanted him (Smith) to go before the authorities and have the suit dismissed; that he replied he did not know how he could do that; that appellant then said he had to leave, and that he told Smith there, in Jackson's presence, that anything he did in the matter would be all right with him; "any understanding we might make would be satisfactory with him; that he knew Jackson and whatever we did would be satisfactory to him." Appellant then left Jackson and witness Smith together, stating he had to go home. Jackson then, after talking in a roundabout way awhile in regard to the alleged theft, stated he did not believe Parks was guilty; "that he stood high; that he had served as deputy sheriff and stood high as a Mason; and he mentioned the fact that he wanted me [witness] or asked me for what amount I would be willing to go before the authorities and see may be if I could stop the suit." To which witness replied that he could not do that. This was objected to on the ground that said conversation was not in the presence of defendant; was hearsay, was not authorized by defendant, and that no statement made either by Jackson or the witness Smith would be binding upon defendant, it not being shown that the particular statement or proposition offered was in any way authorized by defendant. This character of testimony has frequently been held inadmissible; but in all such cases it will be found, there was no proof or evidence tending to show that the proposition was authorized to be made by the defendant. On this subject see White's Ann. C. C. P., sec. 1097. But here it appears that at the beginning of the conversation appellant was present and directly authorized the witness Smith that he could make any arrangement about the case with Jackson, and it would be entirely satisfactory with him. We think it is evident here, at least the testimony tends strongly to show, that this authority had direct reference to the proposition which was subsequently made by Jackson to Smith, and as such it was admissible against appellant.

Appellant complains of the action of the court submitting the second count in the indictment to the jury. The bill shows that at a former term of the court, on the 16th of June, 1903, this case was tried, and at that trial the court instructed the jury as follows: "The first count in the indictment reads: 'Defendant, Lee Parks, is charged with the theft of one cattle, alleged to be the property of Willis Smith, from the possession of its owner,' etc.; to which defendant has pleaded not guilty," etc. And the charge of the court nowhere submitted to the jury any other count than the first. The second count, and other counts, not being submitted to the jury at all. This statement in the bill is agreed by the court to be correct; that at the former trial, the case was submitted to the jury only on the first count, which alleged that the stolen animal belonged to Willis Smith and was taken from

his possession, etc. There are a number of counts in the indictment, and they all relate to one transaction. The first count, as stated, charged the theft of the animal, and the possession thereof to have been in Willis Smith. The second count charged the property and possession to be in Wiley Smith. The third count charged the property of the alleged stolen animal to have been in Willis Smith, and the possession thereof in Wiley Smith at the time it was alleged to have been taken, and was holding the same for the owner, Willis Smith. It has been held in a number of cases, and we believe it is the received doctrine, that where but one transaction is charged in the same indictment in different counts, as here, the State will not be required to elect, but all may be submitted to the jury. Keeler v. State, 15 Texas Crim. App., 111; Moore v. State, 37 Texas Crim. Rep., 552. For other authorities see sec. 405, White's Ann. C. C. P. But if counts are quashed or dismissed the case will proceed to trial on the remaining count or counts. And it has been held that where the court, after the evidence is in, submits the case to the jury on an indictment containing several counts, on one count, such submission will constitute an election on the part of the State, and the other counts will be regarded as dismissed. White's Ann. C. C. P., sec. 404, subdiv. 8; and see Parks v. State, 29 Texas Crim. App., 597; Smith v. State, 34 Texas Crim. Rep., 123; Moore v. State, 37 Texas Crim. Rep., 552; Holt v. State, 39 Texas Crim. Rep., 282; and see 10 Enc. of Pl. and Pr., p. 553. We hold that the action of the court in submitting the case at a former trial on the first count was tantamount to an election and dismissal of the other counts in the indictment and on the succeeding trial the case should have been submitted on the first count.

Appellant excepted to the charge of the court on circumstantial evidence on the ground that it was not full enough, and not in accordance with the approved forms; and in this particular we are referred to Smith v. State, 35 Texas Crim. Rep., 618; Murphy v. State, 36 Texas Crim. Rep., 24. We do not deem it necessary here to discuss the charge of the court in this respect further than to state that it is an easy matter to follow the approved forms, and it will be found that the deviation therefrom generally produces confusion and error.

It is not necessary to discuss other assignments; but for the errors pointed out the judgment is reversed and the cause remanded.

*Reversed and remanded.*

BROOKS, JUDGE (Dissenting.)—I dissent from that portion of the opinion of the majority which controverts the principle laid down in Quintana's case. Neither do I believe that because the court submits only one count in the indictment and a new trial is granted, this necessitates the finding of a new indictment before defendant can be tried.

upon other and different counts than upon the first trial. The counts of the indictment are mere pleadings. The State can rely upon one count in the first trial, and upon a subsequent trial on the other counts.