F. W. Sorell v. The State.

No. 3053.   Decided May 20, 1914.

**1.—Rape—Evidence—Memorandum—Independent Recollection.**

Where, upon trial of rape upon a female under the age of consent, the question of prosecutrix's age was an issue, and the defense offered testimony of a school record with reference to the age of prosecutrix of which the teacher, defendant's witness, had no independent recollection, but remembered that the record was made by her and stated that she did not know whether she had it down correctly, yet, if she would have testified if allowed to do so that she correctly recorded what was then told her by the prosecutrix, the evidence would be admissible, otherwise, it would not be, and the bill of exceptions not properly presenting the matter, there was no reversible error.

**2.—Same—Argument of Counsel—Requested Charge.**

While, upon trial of rape, the argument of State's counsel that influential people and money could beat any case, etc., was highly improper, yet, standing alone, would probably not present reversible error in the absence of a requested charge.

**3.—Same—Evidence—Fabricating Testimony.**

Upon trial of rape, testimony as to a corrupt agreement between the father and others to fabricate testimony for the defense, of which defendant had no notice or knowledge, should not have been admitted in evidence, neither of said parties having been witnesses in the case, except in so far as to be permitted to exonerate themselves of such agreement.

**4.—Same—Rule Stated—Fabricating Testimony.**

Defendant in a criminal case is not bound by, and it is error to prove the effort of his friends, relatives, or attorneys to induce a witness to leave or suppress or manufacture testimony or compromise the case, unless it be shown that the defendant was connected with or authorized the effort to tamper with the witnesses. Following Estep v. State, 9 Texas Crim. App., 366, and other cases.

**5.—Same—Case Stated—Insufficiency of the Evidence—Cross-examination.**

Where, upon trial of rape upon a female under the age of consent, there was a sharp conflict as to whether defendant had sexual intercourse with the prosecutrix, and if he did, whether or not she was under fifteen years of age, and the manner of cross-examination of witnesses by the State's counsel and the testimony having a tendency to create an unjust prejudice against the defendant in view of the improper argument used by State's counsel and in view of the severe punishment assessed, a new trial is granted.

Appeal from the District Court of San Saba.  Tried below before the Hon. Clarence Martin.

Appeal from a conviction of rape; penalty, fifteen years imprisonment in the penitentiary.

The opinion states the case.

*Favers & Allison* and *Flack & Flack* and *W. F. Ramsey* and *C. L. Black* and *H. B. Leonard,* for appellant.—On question of the court's charge and age of prosecutrix: Mason v. State, 72 Texas Crim. Rep., 501, 163 S. W. Rep., 66; Cowden v. State, 68 Texas Crim. Rep., 62, 150 S. W. Rep., 779; Curry v. State, 50 Texas Crim. Rep., 158; Harris v. State, 55 id., 469.

*C. E. Lane,* Assistant Attorney General, and *Dayton Moses,* District Attorney, and *W. H. Browning,* for the State.

HON. BARRY MILLER, SPECIAL JUDGE.—Appellant was charged with the offense of rape committed on a girl alleged to be under fifteen years of age, and his punishment assessed at fifteen years confinement in the State penitentiary.

The evidence was in sharp conflict on two questions, whether or not appellant had sexual intercourse with the girl, and if he did, whether or not she was under fifteen years of age. Callie Edmondson testified positively to an act of intercourse; her father, mother and sister corroborate her, in that they testify that appellant admitted to them that he did have intercourse with the girl, and agreed to leave the county if they would not prosecute him. One of the defenses urged by appellant was that the charge was a conspiracy to extort money from him, he denying positively that he made a confession to the mother or other members of the family, and denied any act of intercourse. He introduced the evidence of a number of witnesses who testified that the reputation of the prosecuting witness for truth and veracity was bad, and a number of ladies who testified that her reputation for virtue and chastity was also bad. Some witnesses testified that statements made to them by the prosecuting witness would tend to support the contention that the prosecution was instituted to extort money.

The family Bible of the Edmondson family was introduced, and this showed her to have been born in November, 1896, and this would make her more than fifteen years old at the time of the commission of the alleged offense. The father testified he made the entry, but it was a

mistake, and Callie was not in fact born until in November, 1897, which would make her only fourteen years old at the time. He testifies that he knows by reason of the fact that she was born in November after the marriage of his son in February, 1897, and the mother and brother also so testify. Appellant introduced other testimony tending to show that the girl and the mother had made statements showing her to be over fifteen. Appellant also introduced Mrs. Walters as a witness who testi- fied she taught in the San Saba public schools during the years 1907 and 1908; that Callie Edmondson attended the school, and she always made a record of the age of the children in her room, and would have testified, if permitted, that while she had no independent recollection of the matter, yet she knew the record presented to her was made by her either in 1907 or 1908; that the age of Callie Edmondson was placed on such roll on information furnished her by the pupil, and that Callie Edmondson then stated to her that she was eleven years of age. This would be material in that if the girl was eleven years old in either 1907 or 1908, at the time the roll was made, she would be more than fifteen years old at the time of the alleged rape. However, the court in qualify- ing the bill states that the witness stated, "She did not know whether or not she had it down correct." Appellant·undertook to except to this qualification of the judge, and attaches the affidavit of Mrs. Walters to the bill in which she states, "The affiant further says, that had she been permitted to do so, she would have testified upon said trial, that the book above mentioned contained a statement of Callie Edmondson's age as being eleven years either on the first of September, 1907 or 1908, the witness could not say which year, and that said statement, so contained in said book, was placed there by the witness at said time based upon state- ments made to her, at said time, by the said Callie Edmondson."

We had this question before us in the case of Misher v. State, 69 Texas Crim. Rep., 223, 152 S. W. Rep., 1049, and held; "If a witness, on look- ing at the writing is able to testify that he knows the transaction therein noted took place, though he has no present memory of it, his testimony is admissible," citing many authorities from this and other States, and to which case we refer for further discussion of the question. We do not understand the qualification of the court, and if he meant to say that the witness testified that she could not tell whether the memoran- dum was a correct statement of what the girl told her, then no error would be presented; but if it only means that the witness said she did not know whether the age was correct or not, but from the memorandum she is able to say that she made the memorandum from what the girl told her, and she is able to say that from this memorandum she knows that she correctly recorded what was then told her by the girl, the evi- dence would be admissible, and the court erred in excluding it. The wit- ness in the affidavit attached to the bill does so state, and if the exception to the court's charge had been properly reserved (Blain v. State, 34 Texas Crim. Rep., 448), we would hold that this bill presented error. On another trial if the witness testified as she says in the affidavit she would

have done if the court had permitted her to do so, the evidence should be admitted, as it bears on a very material issue in the case—the age of the girl.

In another bill appellant alleges that the district attorney in his closing address said, "That money seemed to gather influential friends; that Sorell being rich they were able to gather around them influential people, and that it had frequently been stated that money could beat any case." In approving the bill the court states, "That Mr. Leonard of counsel for defendant had argued to the jury that defendant's father was a rich man, but that fact should not be considered against the defendant. The district attorney in answer to this argument stated that it seemed that in cases where the defendant or his family had plenty of money that this condition would enable the defendant to gather around him influential friends, as had been the result in this case, and that it had been stated that money could beat any case, but that this ought not to be the case, that this defendant should have his case passed on and the question of his guilt determined as though he was the humblest citizen in the court." The court further states that counsel came to him and excepted to these remarks and orally requested him to instruct the jury not to consider such remarks but no written request was presented. We hardly think that counsel for appellant stating that, "Appellant's father being rich, should not be considered against him," authorized counsel for the State to say that where a family had plenty of money that this would enable the defendant to gather around him influential friends, as had been the result in this case, and that it had been stated that money could beat any case, and this ought not to be the case." Under the peculiar facts of this case, this argument was calculated to be very damaging. The evidence discloses that the young lady in question, and her family, were only in moderate circumstances, and labored for a living. Of course, this was not and should not be any reflection on them or either of them. The amount of money one owns makes not the man or the woman. On the other hand, the record discloses that appellant's father was well-to-do, and the district attorney undertook to show that appellant's father and one of his attorneys, or one or the other of them, had undertaken to secure perjured testimony. The evidence further discloses that some of the witnesses who testified in behalf of appellant were ministers of the gospel, wives of the ministers, and other people of equal standing. And in saying this we do not mean to be understood as stating that witnesses offered by appellant were not equally as good people and as worthy of credit, but the fact that the witnesses for appellant were influential should not be to his discredit, and the remarks were of a character that were calculated to create a prejudice against appellant and his witnesses in the light of the testimony in this case. Of course, to bring himself within the rule, appellant's counsel in addition to making the oral request, should have also prepared and presented a special charge; but where the remarks were very harmful and hurtful it has been held in

some cases to present error when only oral request has been made (Parks v. State, 35 Texas Crim. Rep., 378).

In another bill it is made to appear: "The district attorney in the cross-examination of the defendant asked him if acting under his, the defendant's, direction, his senior counsel, Mr. Polk Favers, did not write one Lige Blackburn, a witness in the case, as follows:

"'September 9, 1913.

·" 'Dear Lige: I understand you are to be over in a few days to see about your school matters. Please when you come, come to my office before you see anybody. I think it a good idea to bring another trustee with you, provided he is of the right kind. Stick a match to this letter. Polk.' To which the witness replied: 'No, sir, I don't know anything about that.' And in reply to further questions by the district attorney the defendant further testified as follows:

"I was not here at San Saba when the application was made for him. I never saw him here in San Saba before this term of court. It is not true that within my knowledge an agreement was made with Lige Blackburn that in consideration of help being extended him in a criminal charge pending against him in McCulloch County that he in turn would extend help to me in my case. I never made any such agreement and I don't know anything about any such agreement as that. If it was made by anybody I don't know anything about it. It is not further true that I was informed that the witness, Blackburn, would in consideration of receiving help from my father or me in his McCulloch County case, that he would in turn endeavor as a school trustee to employ Miss May Edmondson as a teacher in the school where he lived in the southwest part of this county and get her in some compromising position or get her to give some statement contradictory of what she might testify in this court. It is not true that with my knowledge and consent one of my attorneys wrote to Mr. Blackburn to come down here when he came to San Saba about his school business and see him first. I did not direct such a letter as that to be written. It is not a fact that Mr. Favers wrote under my direction a letter to Mr. E. E. Blackburn to that effect. I possibly might be acquainted with Mr. Favers' handwriting. I don't know who wrote that address 'E. E. Blackburn.' . . .

"As to whether it is not true that a conspiracy was entered into about Miss May Edmondson and at the time it was entered into, sometime in the summer she was in the State of Missouri and not in Texas, and Lige Blackburn, acting under the direction of my attorney and my own and went to old man Edmondson's place of business and there asked him if he had a daughter who was a school teacher and told him he wanted to employ his daughter to teach school out there, I don't know anything about that. As to whether it is not further true in the pursuance of that conspiracy and within my knowledge this man Blackburn did come to the town of San Saba some few weeks ago and in company with some other man go over to Mr. Edmondson's and make inquiry for his daugh-

ter, May, J don't know anything about that. With reference to whether Blackburn, under my instruction, did not go to Mr. Edmondson, whether in person or in a letter written to Miss Edmondson and state she could board at his house at fifteen dollars a month and bad weather he would take her to and from schoolhouse in an automobile, I don't know anything about that. It is my understanding that Lige Blackburn is acquainted with May Edmondson. I got the information from Mr. Favers. I did not learn how long that acquaintanceship had lasted and I don't know anything about when it begun. Whereupon the district attorney offered in evidence envelope and letter, which testimony was objected to by the defendant at the time it was offered on the following grounds: Because it was not shown by the examination of the defendant that he knew anything about the letter or why it had been written, or anything about any conspiracy between his father, his senior counsel, Mr. Favers, and Mr. Blackburn, to manufacture said testimony, and because the defendant under such circumstances would not be bound by any correspondence that might have taken place between Mr. Blackburn and Mr. Favers, it not being shown that Dr. Sorell consented to the transaction in any way, shape or form, or had any knowledge of it, and because said letter and the questions of the district attorney with reference to the same were highly prejudicial to the defendant and calculated to arouse the prejudices and passions of the jury, and further to discredit and lead the jury to disbelieve all the testimony given and offered by the defendant, and because the same was immaterial and irrelevant to any matter in the case."

Other questions were propounded along the same line, when Mr. Allison of attorneys for defendant said: "We ask the court all this evidence, unless some further evidence is introduced to prove the defendant had some knowledge of this transaction, agreed to it or authorized it, that all this evidence be excluded from the jury and the jury be instructed not to consider it." This the court declined to do, and having refused to strike out this testimony, the defendant's attorneys felt compelled to introduce the attorney who wrote the letter, introduce the letter in evidence, and have him explain why it was written, and in doing so he placed the responsibility on appellant's father. He also testified that appellant knew nothing whatever of the letter having been written. On cross-examination Mr. Favers was asked if it was not a fact that Blackburn had told him he was not going to testify anything against the girl, because Mr. Sorell (appellant's father) had promised to help him out in his case if he would help the old man out in this case, but the old man (appellant's father) had laid down, and the witness answered that Blackburn did tell him that the old man had promised to be at Brady court and help him keep off an indictment, and that the old man had failed to come, and that he, Blackburn, had been indicted.

The State offered no other or different proof that appellant knew that the letter in question had been written or that any effort had been made to get the prosecuting witness' sister in a compromising position.

and get her in position where she could be contradicted on her testimony given in this case, but the testimony and all the testimony adduced, if such conspiracy was entered into, would implicate only Mr. Favers and appellant's father, and the question arises if appellant's father and one of his attorneys did enter such conspiracy, and make an effort to carry it out, can appellant be held responsible for their acts, and is such testimony admissible against him when his father was not a witness in the case, and when the attorney took the stand, not to testify to any fact in regard to whether or not appellant was guilty of the offense charged, but merely to explain his connection with the Blackburn incident which, in so far as this record discloses, appellant had no knowledge of at the time, nor was it done at his suggestion or instance, nor is it shown to have met with his approval. To put the matter in its strongest light, if his father made a corrupt agreement with Blackburn, in which Blackburn agreed to testify to certain matters, but to which he did not testify, or if his attorney sought to get Blackburn to do so, and Blackburn refused, would this evidence be admissible against appellant when it is not shown that he was a party to it, or knew anything about it? If the State had followed the matter up, and by positive testimony or by circumstantial evidence, shown that this was done with appellant's knowledge and consent, or at his instance, then it would have been admissible, but if it was denied by appellant, as he did in this case, the court should have instructed the jury that said matters should not be considered unless they found that the efforts of Favers and his, appellant's father were done with his knowledge. If the father had been a witness in the case there can be no question the evidence would have been admissible as tending to show the bias and interest of the father; or if Favers had been introduced by appellant to prove any fact in his defense, it would likewise have been admissible to prove his interest, etc. (Burnaman v. State, 70 Texas Crim. Rep., 361, 159 S. W. Rep., 244.) But his father was not a witness in this case, and neither was Favers, further than after the State had been permitted to introduce the above testimony, and the court had refused to strike it out, to explain the matter so that it would not be more hurtful than could be avoided and to seek to exonerate himself. He had not been introduced as a witness when the testimony was adduced, and after its introduction he did not take the stand to testify to any fact relating to whether appellant was guilty of the offense charged. The rule in this State is correctly stated in Branch's Criminal Law, sec. 862: "Defendant is not bound by and it is error to prove the efforts of his friends, relatives or attorneys to induce a witness to leave, or suppress or manufacture testimony, or compromise the case, unless it be shown that defendant was connected with or authorized the efforts to tamper with the witnesses. Estep v. State, 9 Texas Crim. App., 366; Favors v. State, 20 Texas Crim. App., 155; Barbee v. State, 23 Texas Crim. App., 199, 4 S. W. Rep., 584; Maines v. State, 23 Texas Crim. App., 568, 5 S. W. Rep., 123; Rushing v. State, 25 Texas Crim. App., 607, 8 S. W. Rep., 807; Nalley v. State, 28 Texas

Crim. App., 287, 13 S. W. Rep., 670; Luttrell v. State, 40 Texas Crim. Rep., 651, 51 S. W. Rep., 930; Newton v. State, 41 Texas Crim. Rep., 610, 56 S. W. Rep., 64; Gann v. State, 57 S. W. Rep., 668; Lankster v. State, 42 Texas Crim. Rep., 360, 59 S. W. Rep., 888; Huff v. State, 61 S. W. Rep., 900; Cogdell v. State, 43 Texas Crim. Rep., 178, 63 S. W. Rep., 645; Garcia v. State, 74 S. W. Rep., 916; Parks v. State, 46 Texas Crim. Rep., 100, 79 S. W. Rep., 301; Suggs v. State, 46 Texas Crim. Rep., 151, 79 S. W. Rep., 307; Swain v. State, 48 Texas Crim. Rep., 98, 86 S. W. Rep., 335; Lara v. State, 48 Texas Crim. Rep., 568, 89 S. W. Rep., 840; McDaniel v. State, 49 Texas Crim. Rep., 47, 90 S. W. Rep., 504; Rice v. State, 51 Texas Crim. Rep., 255, 103 S. W. Rep., 1156; Lounder v. State, 46 Texas Crim. Rep., 121, 79 S. W. Rep., 552; Barber v. State, 70 S. W. Rep., 210; Barnes v. State, 61 Texas Crim. Rep., 37, 133 S. W. Rep., 887."

It is true that appellant denied any connection or knowledge of these matters, yet when his attorney took the stand to explain the letter read by the State in the presence and hearing of the jury on cross-examination of Mr. Favers, the State was permitted to show that Mr. Blackburn had stated to him that appellant's father had promised to aid in his case in Brady, and had failed to do so, etc., and Mr. Favers had testified that appellant's father had informed him of what Blackburn was expected to testify and gave this as his reason for writing the letter. All these proceedings would have a tendency to discredit the testimony of appellant, prejudice the jury against him, and create the impression that an effort had been made by his father and attorney to manufacture testimony in his favor and of necessity discredit to a certain extent the testimony of all his witnesses, and this would be especially true in the light of the remarks of the district attorney heretofore copied herein. We know of nothing that would more inflame a jury than proof that a conspiracy had been entered into to entrap a young lady by offering a school, for the purpose of getting her in position where her testimony might be impeached and her reputation for virtue and chastity assailed.

We have carefully reviewed all these matters, and were they presented properly before us each or any one of the three would present error, and while no one of them in and of itself as presented presents reversible error, yet when we consider all of these matters together in connection with the penalty assessed in this case, we can not say that these matters did not have a tendency to and contribute to the punishment fixed. It is much higher than is usually assessed in this character of case, and yet it being within the limit fixed by law, the jury had the right to assess it, and unless we are convinced these matters contributed to the result, as the record presents them to us, the verdict should not be disturbed. However, the age of the prosecuting witness being a sharply contested issue, and this cloud being improperly cast upon appellant's witnesses; whether or not an act of intercourse took place, being also sharply contested, appellant denying it, and this cross-examination and testimony having a tendency to discredit him, and it being such matters as

would in all cases create a prejudice against one on trial for this character of offense, we are not satisfied to permit the verdict to stand. The record convinces us that these proceedings did contribute to the penalty fixed by the jury, for if the State had not adduced such testimony, and had not appellant been compelled to undergo such harsh cross-examination about matters which he says he knew nothing, the State not connecting him with this effort to manufacture testimony, which would impair a good woman's reputation for virtue, the evidence in this case, while it would most certainly support a verdict of guilt, yet is not of the character that would ordinarily cause one to receive a penalty of fifteen years imprisonment in the penitentiary.

Neither the objections to the court's charge, nor the other matters presented, show any error, and we do not deem it necessary to discuss them. However, as the matters above referred to may have and in our opinion did cause the jury to assess a much higher penalty than would otherwise have been fixed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*