## Z. A. BOOTH v. THE STATE.

### No. 6277.   Decided November 9, 1921.

#### 1.—Assault to Murder—Aggravated Assault—Bill of Exceptions.

Where the bill of exceptions complained of certain questions propounded to witnesses, and objections were sustained to the questions, and the jury instructed to disregard same, the witnesses not being permitted to answer, and the questions themselves not being obviously harmful, there was no reversible error.

#### 2.—Same—Evidence—Mental Attitude—Rebuttal—Practice in Trial Court.

Where, upon trial of assault with intent to murder and a conviction for aggravated assault, the evidence showed that the difficulty between defendant and the party injured grew out of certain loans which the bank, in which both were interested, made, and the method of handling a certain cotton account; and defendant introduced testimony tending to justify his conduct in accepting these loans from the bank, on which it was shown that he paid no interest, was because the same was in the interest of the bank, and that he had the permission of some of the board of directors of said bank to accept said loans, and that the party injured as president stopped said loans without consulting the board of directors, etc., there was no error to permit testimony in rebuttal by the State, showing that the board took action in suspending said loans, etc.; besides, this testimony in chief could only be admissible on the issue of the degrees of the offense, and defendant having been convicted of the lower degree, this passed out of the case.

**3.—Same—Evidence—Bills of Exception—Withdrawing Testimony.**

Where the trial judge qualified the bill of exceptions with reference to the testimony of a certain witness who had been interrogated, as to his directorship in the bank and it was found that he had been such director prior to defendant's connection therewith, there was no error in instructing the jury not to consider such testimony.

**4.—Same—Evidence—Detail of Contract and Conversation—Harmless Error.**

Where, upon trial of assault to murder and a conviction of aggravated assault, the evidence disclosed that the trouble between the parties grew out of certain bank transactions, and a contract of sale between them, there was no error in not permitting the defendant to testify in detail as to a conversation between himself and the party injured, explanatory of part of the contract; besides, the same matter had been substantially admitted in evidence without objection, and the same was harmless error, if any.

**5.—Same—Argument of Counsel—Practice in Trial Court.**

Where, upon trial of assault with intent to murder and a conviction of aggravated assault, the county attorney in his opening remarks to the jury said: "You can go down on the streets and hear men say, 'you can take money and beat any case,'" this, in the absence of a showing in the bill in what connection it was used not appearing in the record, and the court immediately sustaining an objection thereto and instructing the jury to disregard same, and following the same with written instructions of the same import, was not reversible error. Distinguishing Sorrell v. State, 74 Texas Crim. Rep., 100.

**6.—Same—Charge of Court—Self-Defense—Degrees of Assault.**

Where the court's charge on self-defense instructed the jury that in order to justify self-defense, the acts of the injured party must have been such as to cause defendant to believe he was in danger of losing his life, or suffering serious bodily injury, as applied to the charge of assault with intent to murder; but as applied to aggravated or simple assault, the defendant would have the right to defend against any attack or any apparent attack, even though it was not of the character to threaten defendant's life, etc., there was no reversible error.

**7.—Same—Manslaughter—Charge of Court—Provocation—Adequate Assault.**

Where, upon trial of assault to murder and a conviction of aggravated assault, the court charged the jury that in determining the question of adequate cause they were to consider all the facts and circumstances in evidence, etc., there was no reversible error; besides, the defendant being convicted of aggravated assault, the charge of the court, on manslaughter, if defective, was harmless.

Appeal from the District Court of Fallas. Tried below before the Honorable Prentice Oltorf.

Appeal from a conviction of aggravated assault; penalty, a fine of $500.

The opinion states the case.

*Spivey, Bartlett & Carter,* for appellant.—On question of evidence relating to bank loans: Jupe v. State, 217 S. W. Rep., 1041; Faubian v. State, 203 id., 898.

On question of court's charge on self-defense: Jupe v. State, 217 S. W. Rep., 1041; Smith v. State, 135 id., 152; Little v. State, 135 id., 120; Hix v. State, 102 id., 405; Price v. State, 79 id., 540.

R. H. Hamilton, Assistant Attorney General, for the State.

HAWKINS, Judge.—Appellant was indicted for assault with intent to murder one H. D. Crosby. The conviction was for aggravated assault, and punishment fixed at a fine of $500.

In November 1918, and for some time prior thereto, appellant was, and had been, president of the First National Bank of Rosebud, owning a considerable block of stock in the bank. In November 1918 he sold one hundred and thirty-five shares of his stock to Crosby, and the latter became president of the bank. Appellant retained quite a large interest in the institution. The record discloses that from the time Crosby became connected with the business, and indeed before his deal with appellant was closed, their relations became strained, and this was intensified as time progressed. This arose over certain loans which the bank had out, and the method of handling a cotton account. Appellant claimed that Crosby was informed of all the details before he purchased the shares; Crosby on the other hand, claimed that certain statements made to him by appellant relating thereto were not correct, and that the true state of affairs only came to his (Crosby's) knowledge after he became an officer of the bank. Each was accusing the other of causing customers to withdraw their business. The record shows that several assaults were made by appellant on Crosby prior to the assault on May 17th, 1920, upon which this prosecution was based. The foregoing is a condensed statement from a record of one hundred and forty-eight pages, the greater portion of which is taken up with minute details of handling certain loans and cotton accounts, and the reasons why it was done in particular ways.

Bills of exceptions one and three complain of certain questions propounded to witnesses. Objections were sustained to the questions, and the jury instructed to disregard same. The witnesses were not permitted to answer, and the questions themselves were not of that obviously harmful character which would appeal to the court as carrying with them injury to appellant. It is in exceedingly rare instances where this court would feel called upon to reverse a case solely because counsel may have propounded an improper question. Bill number seven recites that it appeared in evidence that appellant was a member of a partnership which had borrowed money from the bank with which to buy cotton, and had paid no interest on such loans, as it was to the interest of the stockholders to encourage the purchase of cotton by said firm as it increased deposits of the bank; that Crosby in the spring of 1919 had required the cotton account to be closed, and thereafter appellant did not further participate in the purchase of cotton; that appellant had introduced evidence that directors of the bank, other than appellant and Threadgill, approved of the action of the bank in loaning this money without interest. (Thread-

gill being a member of the cotton firm, and both he and appellant
being directors and officers of the bank). In rebuttal the State offered
J. F. Wright, who testified that he became a director of the bank in
the summer of 1919; that he, as such director, had no knowledge that
appellant and his partners were borrowing money from the bank
without interest. Objection was made to this testimony because
Wright did not become director until after the cotton account was
closed. The court appended to the bill the explanation that appellant
had offered testimony tending to show that the action of the bank
regarding the cotton account was all taken by Crosby alone as presi-
dent, and the witness Wright testified that the directors instructed
the officers to bring suit to collect the interest on the cotton account,
and in that connection the witness testified that up to that time he did
not know the bank's money was used without interest. As explained
by the trial judge we see no error in admitting this testimony. Cros-
by's efforts to change the policy of the bank in any respect was no
justification for the assault; but in so far as such changes may have
reflected on the former officers it was admissible on the issue of ap-
pellant's mental attitude as determining the grade of offense. The
jury having found him guilty only of aggravated assault, we are un-
able to see how it could have injuriously affected appellant, even if
improperly admitted. Bill of exceptions number eight is to sub-
stantially the same effect as the one just discussed, except that it
discloses that E. L. Taylor, the witness being interrogated, was a di-
rector of the bank prior to appellant's connection with it. The trial
judge qualifies the bill by stating that when this was discovered he
instructed the jury not to consider Taylor's testimony. As so quali-
fied, no error is shown.

Bill number four is entirely too long to be copied in full. After
setting out the entire purchase contract between Crosby and appel-
lant, it shows that the latter, while testifying, offered to testify in
detail as to a conversation between himself and Crosby explanatory
of part of the contract. Upon objection he was not permitted to do·
so. The trial judge certifies in explanation that appellant did testify
to substantially the same facts in other parts of his testimony. We
fail to see the relevancy of this evidence, unless it be on the sole issue
of appellant's mental state brought about, as was evidently the con-
tention, by Crosby not carrying out his contract, and his attitude gen-
erally towards appellant. If it had been excluded we can see no
ground of complaint, because the only issue to which it was relevant
was settled in appellant's favor.

While the assistant county attorney was making his opening argu-
ment he used the following language: "You can go down on the
streets and hear men say, you can take money and beat any case." It
does not appear from the bill in what connection it was used, but
immediately upon objection being made to the remark, the court in-
structed the jury to disregard same, and followed it with a written

instruction to the same import. The same language used under dissimilar conditions may have quite different effects. The only case to which we are cited by appellant's counsel in his brief is Sorrell v. State, 74 Texas Crim. Rep. 100, 167 S. W. Rep. 356. The court, speaking through Miller, Special Judge, expressed disapproval of similar language. Sorrell was charged with rape. His family was wealthy; the alleged injured girl's family just the reverse. Such language under those circumstances might have aroused prejudice in the mind of the jury. However, we can scarcely conceive how, in view of the entire record, it could have had such an effect in the instant case where one banker was being tried for assaulting another. While the language was improper, yet, in the light of all the facts, we would not be warranted in reversing the case for such error.

Complaint is made of the fourteenth paragraph of the court's charge. We do not copy it here on account of its length. We have been unable to agree with appellant's criticism of it. It appears to us very proper to tell the jury, in substance, if appellant intended to kill, in order to justify on the ground of self-defense the acts of the injured party must have been such as to cause appellant to believe he was in danger of losing his life, or suffering serious bodily injury; but as applied to aggravated or simple assault, appellant would have a right to defend against any attack or apparent attack at the hands of the injured party, even though it was not of a character to threaten appellant's life, or put him in fear of serious injury.

Complaint is made of the charge on manslaughter, or as applied to this case, on aggravated assault, because limiting the provocation to one arising at the time of the assault. We find the jury were told that in determining the question of adequate cause they were to consider all the facts and circumstances in evidence. Before the issue of aggravated assault could arise from "adequate cause" the statute requires some provocation at the time of the assault, but as it bears upon the mind of the party acting, other and prior provocation in connection therewith may also be considered. All of these things were in evidence, and the jury were told to consider all facts and circumstances in evidence.

Appellant having been convicted only of aggravated assault, we have been unable to discover where any injury could possibly have resulted to him, even if it be conceded that the charge in question was not as full as appellant contends it should have been.

Having found no reversible error, the judgment of the trial court will be affirmed.

*Affirmed.*