## HEZEKIAH MILLER V. THE STATE.

No. 21230.   Delivered November 27, 1940.
Rehearing Denied January 22, 1941.

The opinion states the case.

*S. M. Adams* and *R. A. McAlister,* both of Nacogdoches, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

GRAVES, Judge.

Appellant was convicted of murder and given a penalty of two years in the penitentiary.

Appellant's first bill of exceptions relates to the fact that while Charlie Bruton, a State's witness, was on the stand he was asked why he went down to appellant's home on the morning of the killing. His answer was that he went down there to get a drink of whisky. Upon appellant's objection, the court instructed the jury to disregard the question and answer thereto; nevertheless appellant reserved his exception to the asking of the question. Appellant argues that the asking of such question was tantamount to proof that appellant was a bootlegger, and would constitute proof of such before the jury. We do not think so. The mere fact that witness went down to appellant's home to get a drink of whisky would not of necessity mean that he went there to buy this drink, nor that appellant was engaged in the unlawful sale of such liquor. There are other inferences that might have been drawn therefrom not quite so damaging to appellant. In any event we think the trial court's prompt instruction should have removed any serious error that might have arisen from the asking of such question, especially in view of the penalty assessed being the minimum for murder.

636

Bill of exceptions No. 2 complains of a certain statement made by the deceased in the presence of Sam Anderson, a witness for the defense, which statement so made was to the effect that the deceased was going to pay the defendant. In order to understand such statement it is necessary to set forth some of the facts proven herein.

The motive for this killing offered by the State, and to some extent by the appellant, arose on account of the fact that the deceased had on the morning of the homicide pawned or sold his watch to one Cherry Marks for the sum of one dollar; thereafterwards it was claimed that he borrowed from appellant $2.35,—$1.10 for the purpose of redeeming this watch, and the remainder for the purpose of buying some whisky, appellant's claim being that the amount of $2.35 being paid the deceased for the watch as purchase money. The deceased then went into a cafe run by the woman Cherry Marks, while appellant waited on the outside. Deceased went on through the cafe and did not redeem the watch. Appellant then went into the cafe and ascertained the fact that the deceased had not obtained this watch which it was claimed had been sold to appellant. Appellant then started home, but on the way he turned back, as he said, for the purpose of playing a piece on a Victrola in this cafe dance hall. Appellant testified that he saw the deceased in the cafe and asked for his money, and that deceased said "I will pay you right now, when I get damned ready," and ran his hand in his pocket, and appellant shoved the deceased back, and "he started on me again and I shot him." As to bill No. 2, while Sam Anderson, a defense witness, was on the stand, upon his cross-examination, over appellant's objection, he gave the following testimony: "After Hezekiah shot Flanagan (the deceased), then I heard Flanagan say, 'I was going to pay you'." The witness further says that appellant was at such time fixing to leave, but was still in the dance hall where the shooting took place, and was fixing to go out the front door. It is gathered from the testimony that this statement made by the deceased was made immediately after he was shot and in the presence of the appellant, and we think the same was res gestae of the transaction, and therefore this bill is overruled.

Bill of exceptions No. 3 complains because of the fact that the witness Previous Adams, a defense witness, upon cross-examination, was asked the question if it was not true that the deceased, just before he expired, had told the witness that the defendant shot him, deceased, because of twenty cents that he owed him. The appellant objected to such question and an

answer thereto, but the witness was permitted to answer, and responded as follows: "I will state that he owed him a debt," evidently meaning that the deceased owed appellant a debt. This testimony relative to the debt being owed was given by appellant himself and enlarged upon as the basis of the trouble, and there was no contradiction thereof by anyone; the existence of the debt was admitted by both sides throughout the trial, and we do not think that this statement by the witness, not responsive to the question, amounted to any error as shown by this bill, and same is therefore overruled.

Bill of exceptions No. 4 complains of the fact that there was passed to the jury, and they were permitted to take into the jury room with them, a written statement of the witness Previous Adams, and signed by him, which was made the day previous to the trial before a notary public. There was no objection shown to have been offered to the introduction of the statement, the objection going only to the passing of the same into the jury box, and allowing the jury to take same into their room during a recess of the court. It will therefore be noted that there was no objection made as to the introduction of the evidence, but merely to the fact that such statement was handed to the jury and they were allowed its possession during a recess, and nowhere in said record do we find any motion of any kind offered requesting the withdrawal of such statement from the jury, nor an objection made as to its introduction in evidence.

The statute, Art. 674, C. C. P. says: "The jury may take with them any writing used as evidence." We also have held, in substance, that "when a jury retires to consider of their verdict, they are entitled to take with them all evidence admitted in the case." Heard v. State, 9 Texas Crim. App. 1. As this bill is drawn we see no error reflected therein.

Bill of exceptions No. 5 is based on the following occurrence: While the appellant was on the witness stand, upon cross-examination, he was asked by the State if it wasn't a fact that "Mr. Burl Martin was at the defendant's home on Saturday night before the killing Sunday, and that if he did not take the gun away from the defendant on Saturday night before the killing on the following Sunday, and that if it was not a fact that Mr. Burl Martin took the same pistol away from the witness, the defendant, and unloaded it and kept the shells until the next morning and gave them back to the defendant the next morning."

All the parties to the killing, as well as the witnesses thereto, were negroes, and appellant objected to the asking of this question because it was an endeavor to show the commission of another and different offense than the one for which appellant was on trial, and was an attempt to show that appellant had made a gun play in the presence of Mr. Martin, a white man, and an effort to thereby inflame the minds of the jury against appellant. However, appellant seems to have satisfactorily answered the question as follows: "I don't know Mr. Burl Martin. If he was at my house Saturday evening, I did not know him. I did not see him. He didn't take a gun away from me on Saturday of the killing. Mr. Burl Martin was not at my house on the Saturday before the killing on Sunday. If he was, I wasn't there. He did not take the same pistol from me and unload it and keep the shells until the next morning and give them back to me on Sunday morning."

That such question should not have been asked seems clear to us; it is however to be noted that this matter was allowed to rest with appellant's complete and vigorous denial of the whole transaction, and the State pursued the query no further.

The testimony herein was ample to show appellant's guilt, and the jury gave him the lowest penalty for murder without malice. This useless killing was based upon a debt, not more than an hour and a half old, of two dollars and thirty-five cents, and the killing of an unarmed man because of this matter, so the jury's verdict said, which facts would have supported a more onerous verdict, and in view of the two years penalty awarded appellant, we do not think the asking of this question could have had any influence on the verdict found by the jury.

In 4 Texas Jur., p. 597, it is said: "Thus propounding a question, an affirmative answer to which might be hurtful to the accused, is not reversible error if the answer was in the negative," citing Alexander v. State, 8 S. W. (2d) 176; Dyer v. State, 107 Texas Crim. Rep. 345, 296 S. W. 525; Musick v. State, 106 Texas Crim. Rep. 207, 292 S. W. 223; Ard v. State, 101 Texas Crim. Rep. 545, 276 S. W. 263, and cases there cited.

We find the following in the case of Fritts v. State, 42 S. W. (2d) 612, in which the jury had awarded Fritts a death penalty: "Bills of exception 6, 7 and 8 deal with the same question and will be discussed together. Appellant testified, on cross-examination, without objection, that he had been indicted for selling intoxicating liquor to O. S. Shamburger. He had not been tried on this indictment. The district attorney asked appellant if it were not a fact that he went to O. S. Shamburger after he

was indicted and told him what he would do if he appeared as a witness against him in the liquor case. Appellant objected to the asking of the question on the ground that it was prejudicial, inflammatory, and irrelevant, and asked the court to instruct the jury to disregard it for any purpose. The objection being overruled, appellant answered in the negative. Substantially the same question was asked appellant in connection with an indictment charging him with the sale of intoxicating liquor to Roy Petit. The district attorney also asked appellant if he knew that Petit was in Louisiana when the case was called for trial. Appellant answered both questions in the negative. The matter was pursued no further by the district attorney. If the questions were improper, which is not decided, a reversal would not necessarily follow. In Booth v. State, 90 Texas Cr. R. 240, 234 S. W. 888, 889, this court, speaking through Judge Hawkins, said: 'It is in exceedingly rare instances where this court would feel called upon to reverse a case solely because counsel may have propounded an improper question.' We quote from Ard v. State, 101 Texas Cr. R. 545, 276 S. W. 263, 265, as follows: 'The asking of a question whose affirmative answer might be hurtful to the accused would ordinarily present no error when complained of in a bill of exceptions unless the answer is given, and, if given and answered in the negative, as is the case in appellant's bill of exceptions No. 5, no error would be made to appear'."

We are of the opinion that no error is shown in said bill No. 5, and perceiving no error in the record the judgment is affirmed.

### ON MOTION FOR REHEARING.

BEAUCHAMP, Judge.

Appellant has filed a very insistent motion for rehearing in which he presents his views on two propositions.

In treating bill of exception No. Four the original opinion recites that the statement of the witness there involved was admitted in evidence without objection. Appellant's attorney in his motion urgently insists that he should be put in the proper light. If the court has placed the attorney in an improper position and reflected on his ability as an attorney, it is our duty to do that.

Upon a thorough examination of the record, we find ourselves confronted with this situation: A witness for defendant had given a written statement embracing, in part, his evidence. When he concluded his testimony in behalf of the defendant on the trial of the case the prosecution produced this statement

and had him to identify it. As he did so it was then offered in evidence, but it was not at that time exhibited to the jury. If there is anything in the record to indicate an objection to it, or what that objection was, we are unable to find it. Later and after several other witnesses had been placed on the stand the State presented this written statement to the jury for their examination, and the record shows that appellant then objected to it being passed to the jury. If the two incidents of offering it in evidence and passing it to the jury had been simultaneous, we would be able to construe the objection as going to the admissibility of the instrument in evidence. Under the record as we find it, it would appear to be too late to offer any objection to its admissibility, made as it was, at the time it was passed to the jury. Furthermore, the bill does not disclose an objection to the evidence, which, we think, would be valid even if made at the time it was offered in evidence. If there is a difference between the evidence which the witness gave upon the trial and the contents of the written statement which bears on any material issue in the case, we have been unable by comparison to discover it. The statement in the original opinion seems to be warranted by the record before this court.

We are frank to admit that an able argument of counsel in his motion for rehearing on bill of exception No. Five presents a troublesome question. It was so recognized by this court on original hearing. It is not viewed by us as an elementary proposition as it appears in the record before us. The conclusion was reached in the original opinion which we believe to be sound, and that is herein adhered to.

The motion for rehearing is overruled.